(No. 63297.—

PESTICIDE PUBLIC POLICY FOUNDATION, Appellee, v. THE VILLAGE OF WAUCONDA *et al.*, Appellants.

*Opinion filed June 16, 1987.*

GOLDENHERSH, J., took no part.

Marvin J. Glink, Peter M. Rosenthal and Barbara A.

Adams, of Ancel, Glink, Diamond, Murphy & Cope, P.C., of Chicago, and Hercules Paul Zagoras, of Waukegan, for appellants.

Gerald L. Angst and James F. Warchall, of Sidley & Austin, of Chicago, for appellee.

JUSTICE MILLER delivered the opinion of the court:

Plaintiff, the Pesticide Public Policy Foundation, filed suit in the United States District Court for the Northern District of Illinois, Eastern Division, challenging the validity of a pesticide regulation ordinance enacted by defendant village of Wauconda, Illinois. The Federal district court found that the Wauconda ordinance was preempted by the Illinois Pesticide Act of 1979 (Ill. Rev. Stat. 1983, ch. 5, pars. 801 through 828) and the Structural Pest Control Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 2201 through 2225); the district court granted plaintiff's motion for summary judgment on its preemption claim, and held the ordinance void *ab initio*. The village appealed the district court's order to the United States Court of Appeals for the Seventh Circuit. Noting that the case presented unresolved issues of Illinois law which might control the outcome, the Seventh Circuit court requested that this court consider two questions of State law certified by the Seventh Circuit. We accepted the certification, pursuant to our Rule 20 (103 Ill. 2d R. 20).

The plaintiff is a nonprofit corporation whose members include professional lawn care, arboriculture, and pest control operators. Plaintiff states that its members serve customers within the village limits of defendant village of Wauconda.

The village is a non-home-rule unit of local government, which enacted its ordinance No. 1984—0—31 to

regulate pesticide use in the village. The ordinance prohibits "users of pesticides" from applying pesticides without registering in the village clerk's office and obtaining a permit. The ordinance defines "user of pesticides" as a person engaged in pesticide application for hire, or the landlord or tenant of a public building. To obtain a permit, the user must sign an application bearing his business name, address, telephone number, and trade names of pesticides to be used, and must furnish a valid State license. The user also must pay a $25 annual fee. The ordinance requires the posting of certain notices following indoor and outdoor pesticide application, and application to a lake. The ordinance also restricts application by fogging, and prohibits application of pesticides into the atmosphere when the wind velocity exceeds 10 miles per hour.

The plaintiff filed a five-count complaint in the United States District Court for the Northern District of Illinois, Eastern Division, contesting the ordinance. Named as defendants were the village of Wauconda, the village president, and the trustees of the village. The complaint alleged the ordinance was preempted by both Federal and State statutes, was beyond the power of Wauconda as a non-home-rule unit in Illinois, violated due process and equal protection under the Federal and State constitutions, and violated the commerce clause of the Federal Constitution. The Federal district court granted plaintiff's motion for summary judgment on the State preemption claim, concluding that the Wauconda ordinance had been preempted by the Illinois Pesticide Act of 1979 (Ill. Rev. Stat. 1983, ch. 5, pars. 801 through 828), and the Illinois Structural Pest Control Act (Ill. Rev. Stat. 1983, ch. 111½, pars. 2201 through 2225). The district court ruled that the ordinance was void, and enjoined the village from enforcing the ordinance. The court found, however, that the plaintiff lacked standing to seek

recovery of the costs and expenses incurred by plaintiff's members in complying with the ordinance. The court also held that the ordinance did not violate the equal protection or due process clauses of the Federal or State constitutions. The court did not address the Federal preemption claim or the claim that the village lacked authority to adopt the ordinance at issue.

The defendants appealed to the United States Court of Appeals for the Seventh Circuit. Recognizing that issues of Illinois law may determine the outcome of the case, the circuit court certified the following questions of law for our consideration:

"1. Is Wauconda, a non-home rule unit, authorized to enact the ordinance at issue under either section 11—20—5 or section 11—19.1—11 of the Illinois Municipal Code?
2. Is the ordinance preempted by the Illinois Pesticide Act and the Illinois Structural Pest Control Act?"

This court accepted the certified questions under Supreme Court Rule 20 (103 Ill. 2d R. 20).

I

Our analysis must begin by determining whether Wauconda had the power to adopt ordinance No. 1984—0—31. Only if we answer this question in the affirmative must we consider whether the village's power is preempted by either of the two Illinois acts regulating pesticides. As the Seventh Circuit court recognized, the municipality's power to act is an issue entirely separate from the question of whether this power has been preempted or superceded by the superior authority of another lawmaking body.

In contrast to the broad powers exercised by home rule units in Illinois (see Ill. Const. 1970, art. VII, sec. 6(a)), Wauconda, as a non-home-rule unit, has only those powers granted to it by law, and certain powers enumerated in article VII, section 7, of the Illinois Constitution

(Ill. Const. 1970, art. VII, sec. 7). The commentary to section 7 notes that this section maintains the concept of Dillon's Rule with respect to non-home-rule units of local government. (Ill. Ann. Stat., 1970 Const., art. VII, sec. 7, Constitutional Commentary, at 36 (Smith-Hurd 1971); see *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 352.) Dillon's Rule provides that municipalities possess only those powers expressly granted, powers incident to those expressly granted, and powers indispensable to the accomplishment of the declared objects and purposes of the municipal corporation. (*Consumers Co. v. City of Chicago* (1924), 313 Ill. 408, 411-12; 1 J. Dillon, Municipal Corporations sec. 237 (5th ed. 1911).) Because pesticide regulation is not indispensable to the purposes of the village, the village must point to some statute which expressly or impliedly authorizes the village to enact the ordinance at issue. As indicated by the first of the questions certified by the Seventh Circuit, the village contends that two statutes, sections 11–19.1–11 and 11–20–5 of the Illinois Municipal Code (Ill. Rev. Stat. 1983, ch. 24, pars. 11–19.1–11, 11–20–5), authorize its enactment of the ordinance.

For the purposes of lessening or preventing the discharge of air contaminants, section 11–19.1–11 of the Municipal Code authorizes city or village authorities to regulate by ordinance any activity, equipment, or use of land causing air contamination. The Wauconda ordinance, however, is not intended to lessen or prohibit the discharge of pesticides into the air. The ordinance bans application of pesticides by fogging within 10 feet of a property line, but this activity may be carried on elsewhere. And, while the ordinance prohibits the introduction of pesticides into the atmosphere when the wind velocity exceeds 10 miles per hour, the intended amount of pesticide may be applied at other times.

In addition to failing to lessen the discharge of air contaminants, the ordinance is broad in scope, applying to more than pesticides applied by spraying or fogging; the ordinance also regulates use of solid pesticides in granular form, pesticides used to treat lake water, and indoor use of pesticides. Statutes granting power to a municipal corporation are construed strictly against the municipality claiming the right to exercise the power. (*Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 31.) Wauconda ordinance No. 1984—0—31 is not a valid exercise of the village's power to lessen or prevent the discharge of air contaminants under section 11—19.1—11 of the Illinois Municipal Code.

The defendant village contends that section 11—20—5 of the Illinois Municipal Code empowers it to enact the ordinance. Section 11—20—5 provides, "The corporate authorities of each municipality may do all acts and make all regulations which may be necessary or expedient for the promotion of health or the suppression of diseases ***." (Ill. Rev. Stat. 1983, ch. 24, par. 11—20—5.) Although this section does not specifically mention pesticide restriction, the defendants note that a number of powers exercised by municipalities have been upheld under the general grant to municipalities of authority over public health. (See, *e.g., Father Basil's Lodge, Inc. v. City of Chicago* (1946), 393 Ill. 246 (power to license homes for aged); *Consumers Co. v. City of Chicago* (1924), 313 Ill. 408 (power to regulate collection and disposal of garbage); *Village of Carpentersville v. Fiala* (1981), 98 Ill. App. 3d 1005 (power to limit number of dogs at residence); *City of Des Plaines v. Gacs* (1978), 65 Ill. App. 3d 44 (power to prohibit pigeon keeping).) The defendants suggest that the authority to regulate pesticides is within the power to promote public health.

The legislature has recognized in the Illinois Pesticide Act of 1979 that "it is essential to our general health

and welfare that [pesticides] be regulated to prevent adverse effects on man and his environment." (Ill. Rev. Stat. 1983, ch. 5, par. 802.) Pesticide regulation, therefore, is a matter clearly relating to public health.

The ordinance at issue imposes certain restrictions and obligations upon commercial pesticide applicators and others who apply pesticides where the public may encounter them; the purpose of these restrictions and obligations is plainly to prevent adverse effects on the citizens of Wauconda and their property. The notice requirements in the ordinance, for example, permit persons sensitive to pesticides to avoid them. The provision prohibiting application of pesticides when the wind velocity exceeds 10 miles per hour is intended to prevent the transmission of pesticides to places other than those intended, and prevent any unforeseen results on persons and property. Among the most important of the police powers is the preservation of the health and safety of citizens of a community. (See *Village of Spillertown v. Prewitt* (1961), 21 Ill. 2d 228.) We conclude that the Wauconda ordinance is within the village's authority to promote the public health under section 11—20—5 of the Municipal Code. We must consider, therefore, whether the village's otherwise valid power to enact this ordinance has been preempted.

## II

The Federal district court ruled that the Illinois Pesticide Act of 1979 (the Pesticide Act) and the Structural Pest Control Act (Pest Control Act) preempt the village's ordinance. For the reasons which follow, we agree.

Each of the two acts regulating pesticides is broad in scope. The Pesticide Act declares its purpose to be the regulation in the public interest of the labeling, distribution, use, and application of pesticides. (Ill. Rev. Stat.

1983, ch. 5, par. 802.) The Pesticide Act delegates broad authority over pesticides to three State agencies with expertise in particular areas relevant to pesticide regulation: the Department of Agriculture is to enforce the Pesticide Act and other acts controlling the registration, use, purchase, storage, and disposal of pesticides, and is to control in particular the use of pesticides related to agriculture; the Department of Public Health is charged under the Pesticide Act with controlling pesticides used for structural pests; and the State Environmental Protection Agency is required under the Pesticide Act to protect the quality of the air, water, and land resources with regard to pesticides. (Ill. Rev. Stat. 1983, ch. 5, par. 803.) The Director of the Department of Agriculture is authorized specifically to make appropriate regulations as to the time, place, manner, amounts, combinations and concentration of pesticide application. (Ill. Rev. Stat. 1983, ch. 5, par. 808.) The Pesticide Act also provides for the licensing and regulation of commercial pesticide applicators. Ill. Rev. Stat. 1983, ch. 5, pars. 809 through 814.

The Pest Control Act states its purpose as promoting public health by establishing minimum standards for the selection, formulation, and application of restricted pesticides. (Ill. Rev. Stat. 1983, ch. 111½, par. 2202.) Regulation and enforcement of the provisions of the Pest Control Act is charged to the Department of Public Health. (Ill. Rev. Stat. 1983, ch. 111½, par. 2210.) It is clear that the Wauconda ordinance regulates activities that are within the powers of the directors of the Agriculture and Public Health departments to regulate under the Pesticide Act and the Pest Control Act.

Where the legislature enacts a comprehensive scheme of regulation, the legislature implies by the scheme that there is no room for additional regulation by local government units. (*American Smelting & Refining Co. v.*

*County of Knox* (1974), 60 Ill. 2d 133, 139; *Chicago School Transit, Inc. v. City of Chicago* (1966), 35 Ill. 2d 82, 86.) Taken in concert, the statutes regulating pesticides address the labeling, use, distribution, purchase, registration and application of pesticides, in addition to limiting the harmful effects of pesticides on the environment. In short, the acts present a broad and detailed scheme designed to regulate the field of pesticide use in all respects. Although the Pesticide Act, together with the Pest Control Act, has divided its expansive authority over pesticides among three entities, all of them are agencies of State government; notably absent from the acts is any provision delegating authority to, or allowing regulation by, units of local government. (*Cf. Illinois Liquor Control Com. v. City of Joliet* (1975), 26 Ill. App. 3d 27 (broad delegations of power throughout act showed legislative desire to allow local control).) It is apparent from the acts that the General Assembly has intended that the State occupy exclusively the field of pesticide regulation.

In addition to regulating comprehensively the field of pesticides, the legislature has expressed in the Pesticide Act a desire for uniformity of regulations. (See *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406.) Section 20 of the Pesticide Act empowers the Director of the Department of Agriculture to "enter into cooperative agreements or contracts with, any agency of the federal government, of this State, or any other state in order to \*\*\* [s]ecure uniformity of regulation." (Ill. Rev. Stat. 1983, ch. 5, par. 820; see also Ill. Rev. Stat. 1983, ch. 5, par. 808 ("For purposes of uniformity and in order to enter into cooperative agreements, the Director may adopt use classifications \*\*\*").) It would not be possible, however, to have uniform regulations between this and other States or with the Federal government if pesticide regulations were not uniform within the State itself. Diverse

pesticide regulations by the numerous local governments in Illinois would entirely frustrate the potential for uniformity between Illinois and other States or the Federal government. (See *Ames v. Smoot* (1983), 98 A.D.2d 216, 471 N.Y.S.2d 128.) A uniform system of regulations with another State or the Federal government would require a single set of pesticide regulations governing throughout the State.

The village maintains that the legislature could not have intended a uniform, statewide scheme of pesticide regulation, because neither act expressly preempts the power of home rule units in this field; under article VII, section 6(i), of the Constitution, home rule units may exercise any home rule function to the extent the General Assembly does not specifically limit the concurrent exercise of the power, or specifically declare the State's exercise to be exclusive (Ill. Const. 1970, art. VII, sec. 6(i)). The village argues that allowing home rule units to retain their powers in this area prevents any implication that the legislature could have sought statewide uniformity.

This court has previously recognized the distinction between home rule units and non-home-rule units in a legislative scheme enacted to establish a unified statewide program of regulation. In *Carlson v. Village of Worth* (1975), 62 Ill. 2d 406, this court refused to allow a non-home-rule county to impose additional requirements upon a company holding a permit from the Illinois Environmental Protection Agency to operate a landfill. The court stated that the county's additional requirements would frustrate a unified State scheme of environmental protection. (See *County of Kendall v. Avery Gravel Co.* (1984), 101 Ill. 2d 428, 433.) In *County of Cook v. John Sexton Contractors Co.* (1979), 75 Ill. 2d 494, this court held that Cook County, a home rule unit, could require the owners of a sanitary landfill to comply with a county

zoning ordinance, in spite of the uniformity goal in section 2 of the State Environmental Protection Act (Ill. Rev. Stat. 1977, ch. 111½, par. 1002(a)). In *County of Cook*, this court observed that home rule and non-home-rule units may occupy a different position under the Illinois Constitution with respect to preemption.

Whether the legislature has sought uniformity of pesticide regulation through the Pesticide Act and the Pest Control Act is a question entirely separate from whether the legislature has used the proper method of preempting home rule units of local government. In addition, it is conceivable that, as the plaintiff suggests, the legislature assumed that all local government regulation of pesticides was preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. secs. 136 through 136y (1982 and Supp. 1987)); if the legislature assumed this, it may have concluded that express preemption of home rule units in the Illinois statutes was unnecessary. In any event, the village of Wauconda is not a home rule unit. The issue of whether the legislature adequately provided for the preemption of home rule units is not presented here.

The village contends that regardless of whether the acts taken together create a comprehensive and uniform scheme, its ordinance regulates pesticide application for a different purpose and in different areas than do the State acts. The village suggests, therefore, that its ordinance is not within the State scheme. We disagree. The village asserts that the purpose of its pesticide ordinance is to protect the public health and safety, and the substantive provisions of the ordinance support this assertion. Section 2 of the Pest Control Act (Ill. Rev. Stat. 1983, ch. 111½, par. 2202) states, however, that "the purpose of this Act is to protect, promote and preserve the public health and general welfare by providing for the establishment of minimum standards for selection, formulation and applica-

tion of restricted pesticides and to provide for the licensure of commercial structural pest control businesses." Section 2 of the Pesticide Act (Ill. Rev. Stat. 1983, ch. 5, par. 802) declares similarly that the purpose of the Pesticide Act is to regulate pesticides, as such regulation is essential to the general health and welfare. It is clear that the purpose of the ordinance is identical to that of the State acts.

In the Pesticide Act and the Pest Control Act the legislature has determined which persons seeking to apply pesticides are to be regulated through licensing, and has established requirements for obtaining the appropriate license. Through its ordinance, however, the village has prohibited persons holding valid State licenses from applying pesticides unless these persons obtain an additional permit from the village after paying the required fee. The village also has imposed certain requirements upon pesticide applicators which must be observed, even though the State agencies charged with pesticide regulation have not determined that these requirements are necessary to protect the public health. The ordinance, therefore, imposes an additional layer of regulation upon certain persons who intend to apply pesticides. The village has, in effect, substituted its opinion of what is necessary to promote public health for the opinions of the entities to which the legislature has delegated statewide authority over pesticides because of their technical expertise. The ordinance, therefore, impermissibly interferes with the State's licensing scheme by prohibiting pesticide application when the State would allow it; the ordinance also conflicts impermissibly with the regulatory scheme of the acts by requiring acts which the State has not determined necessary for public safety. To allow a local non-home-rule unit of government to override the determinations of the legislature would frustrate the purposes of the acts. See *Town of*

*Wendell v. Attorney General* (1985), 394 Mass. 518, 529-30, 476 N.E.2d 585, 592.

We hold that because of the comprehensiveness of the two acts, and because of a legislative interest in uniformity, the village of Wauconda, a non-home-rule unit, is preempted by these acts from enacting its ordinance regulating pesticides.

In response to the questions certified by the United States Circuit Court of Appeals for the Seventh Circuit, we conclude:

(1) that Wauconda, a non-home-rule unit of local government, is empowered by section 11—20—5 of the Illinois Municipal Code to enact Wauconda ordinance No. 1984—0—31;

(2) that Wauconda's exercise of its power to enact this ordinance is preempted by the Illinois Pesticide Act of 1979 and the Structural Pest Control Act.

*Certified questions answered;*
*cause transferred.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.