No. 2--96--1060

                                                       

_________________________________________________________________

                             IN THE

                  APPELLATE COURT OF ILLINOIS

                         SECOND DISTRICT

_________________________________________________________________

COMMONWEALTH EDISON COMPANY,    )  Appeal from the Circuit Court

                                )  of Du Page County.

     Plaintiff-Appellee,        )

                                )

v.                              )  No. 96--MR--0167

                                )

THE CITY OF WARRENVILLE,        )  Honorable

                                )  Bonnie M. Wheaton,

     Defendant-Appellant.       )  Judge, Presiding.

_________________________________________________________________

     JUSTICE THOMAS delivered the opinion of the court:           

   

     The plaintiff, Commonwealth Edison Company (ComEd), brought

this action seeking to enjoin the defendant, the City of

Warrenville (Warrenville), from using its zoning power to halt a

project involving the construction of a new transmission line.  The

circuit court of Du Page County held that Warrenville's authority

to halt or regulate the project through its zoning ordinance was

preempted.  The court therefore permanently enjoined Warrenville

from interfering with the project.  Warrenville appeals.

     The record reveals that ComEd is a public utility regulated by

the Illinois Commerce Commission (Commission) under the Public

Utilities Act (220 ILCS 5/1--101 et seq. (West 1994)).  ComEd

provides electric service to customers throughout northern Illinois

through the use of an integrated network of several thousand miles

of high-capacity transmission lines operating at voltages of 138

kilovolts (kV) and above.  These lines move "bulk power" from the

various sources of supply to the portions of ComEd's service

territory where customer demand exists.  The power is eventually

distributed to customers through a distribution system.

     On October 18, 1995, pursuant to the Public Utilities Act, the

Commission granted ComEd a certificate of public convenience

authorizing ComEd to construct a new 138-kV transmission line and

substation to meet the growing electric-service needs of the

Wheaton-Warrenville area.  The Commission entered its order

granting the certificate after extensive hearings in which

Warrenville participated and opposed the project.  The Commission

found that the project was the only means of continuing to provide

reliable electric service to central Du Page County (County) and

that alternatives proposed by Warrenville were not feasible or

reasonable.  In part, the plan called for the installation of a

138-kV line to be installed along four miles of the Prairie Path

replacing the existing 34-kV line.  The Prairie Path is a hiking

and nature trail used by pedestrians, cyclists, and equestrians. 

The County owns the path, but ComEd has a perpetual easement along

it to construct, repair, and operate its towers, poles, lines,

wires, and cables.      

     In its order, the Commission rejected arguments raised by

Warrenville relating to local land use and specifically stated that

its order was not conditioned on local zoning or permit approval. 

Warrenville appealed the Commission's order to this court. 

Warrenville also sought to stay the Commission's order pending

appeal.  Both the Commission and this court refused to stay the

Commission's order.

     After this court denied the request for a stay, ComEd notified

Warrenville on January 18, 1996, that it would begin construction

of the project.  Warrenville then informed ComEd that it would not

permit the project to be constructed unless ComEd obtained a

special use permit from Warrenville before beginning construction. 

When ComEd began preliminary work on the project on January 25,

1996, Warrenville police arrived on the scene and halted all work. 

ComEd subsequently filed this action seeking to enjoin Warrenville

from interfering with the project.

     After hearing testimony and the parties' legal arguments, the

trial court found that the legislature had vested the Commission

with the authority to regulate utilities and that Warrenville's

exercise of its zoning authority to regulate or require permits for

the type of construction approved and authorized by the Commission

was preempted.  Accordingly, the trial court issued a permanent

injunction prohibiting Warrenville from interfering with the

project.  Thereafter, Warrenville appealed the trial court's order. 

This court granted Warrenville's motion to stay the trial court's

order pending the outcome of this appeal.

     On September 27, 1996, this court decided the first appeal in

this case and in a Rule 23 order affirmed the Commission's order

granting ComEd a certificate to construct the project.  County of

Du Page v. Illinois Commerce Commission, No. 2--96--0027 (1996)

(unpublished order under Supreme Court Rule 23).  In reaching our

decision in the first appeal, we held, among other things, that the

Commission properly determined that it would not condition granting

the certificate to ComEd on its ability to obtain any unspecified

local permits.  In so holding, we found that "any ordinance enacted

by a home-rule unit which effectively regulates a construction

project approved by the Commission after a section 8--406(b)

proceeding is preempted."  County of Du Page, slip op. at 45.  We

further found that a non-home-rule unit of local government would

be without the power to enact such an ordinance.  This court also

noted that it would leave to be addressed in another case the

question of how its analysis would affect the application of

Warrenville's particular zoning ordinance.

     In this appeal, Warrenville  raises that issue, contending

that its zoning powers were not preempted by the Public Utilities

Act.

     The intent of the General Assembly in enacting the Public

Utilities Act is located in section 1--102 (220 ILCS 5/1--102 (West

1994)), which provides in pertinent part:

          "The General Assembly finds that the health, welfare and

     prosperity of all Illinois citizens require the provision of

     adequate, efficient, reliable, environmentally safe and least-

     cost public utility services at prices which accurately

     reflect the long-term cost of such services and which are

     equitable to all citizens.  It is therefore declared to be the

     policy of the State that public utilities shall continue to be

     regulated effectively and comprehensively."  220 ILCS 5/1--102

     (West 1994).

     To supervise public utilities, the General Assembly created

the Commission.  220 ILCS 5/2--101 (West 1994).  The General

Assembly also explained the Commission's duties:

          "The Commission shall have general supervision of all

     public utilities, except as otherwise provided in this Act,

     shall inquire into the management of the business thereof and

     shall keep itself informed as to the manner and method in

     which the business is conducted.  It shall examine those

     public utilities and keep informed as to their general

     condition, their franchises, capitalization, rates and other

     charges, and the manner in which their plants, equipment and

     other property owned, leased, controlled or operated are

     managed, conducted and operated, not only with respect to the

     adequacy, security and accommodation afforded by their service

     but also with respect to their compliance with this Act and

     any other law, with the orders of the Commission and  with the

     charter and franchise requirements."  220 ILCS 5/4--101 (West

     1994).

Moreover, the Commission has the exclusive responsibility to

     "see that the provisions of the Constitution and statutes of

     this State affecting public utilities, the enforcement of

     which is not specifically vested in some other officer or

     tribunal, are enforced and obeyed, and that violations thereof

     are promptly prosecuted and penalties due the State therefor

     recovered and collected."  220 ILCS 5/4--201 (West 1994).

     Among the  provisions of the Public Utilities Act which the

Commission is obligated to enforce is section 8--406(b) (220 ILCS

5/8--406(b) (West 1994)).  Section 8--406(b) provides that no

public utility shall begin the construction of any new plant,

equipment, property, or facility unless it obtains from the

Commission a certificate of public convenience and necessity.  220

ILCS 5/8--406(b) (West 1994).  For its part, the Commission cannot

issue a certificate unless it will promote the public convenience

and necessity.  220 ILCS 5/8--406(b) (West 1994).

     It becomes clear, therefore, that the State has "created a

comprehensive scheme for the regulation of public utilities

generally."  Kirwin v. Peoples Gas Light & Coke Co., 173 Ill. App.

3d 699, 705 (1988).  Since the enactment of the Utilities Act in

1913, the regulation of public utilities generally has been an area

of statewide and not local concern.  See City of Geneseo v.

Illinois Northern Utilities Co., 363 Ill. 89, 94-95 (1936); Peoples

Gas Light & Coke Co. v. City of Chicago, 125 Ill. App. 3d 95, 100-

01 (1984).  More specifically, the Public Utilities Act vests the

Commission with the responsibility for determining when a

construction project will promote the Act's goal of ensuring

adequate, reliable, efficient, and least-cost electrical service to

the state's citizens.

     With this background information in mind, we turn to the issue

at hand:  whether Warrenville's zoning ordinance is preempted to

the extent that it interferes with ComEd's project as approved by

the Commission.  In Illinois, local governmental bodies (counties

and municipalities) fall into one of two categories:  home-rule

units and non-home-rule units.  The powers accorded to each are

different.  Thus, we will examine separately the power of these two

units to enact ordinances that regulate Commission-approved

construction projects.

     We first address the power of home-rule units to enact

ordinances that regulate public utilities.  The terms for the grant

of home-rule power are contained in article VII, section 6(a), of

the Illinois Constitution of 1970, which provides:

     "Except as limited by this Section, a home rule unit may

     exercise any power and perform any function pertaining to its

     government and affairs including, but not limited to, the

     power to regulate for the protection of the public health,

     safety, morals and welfare; to license; to tax; and to incur

     debt."  Ill. Const. 1970, art. VII, §6(a).

Section 6(m) provides that "[p]owers and functions of home rule

units shall be construed liberally."  Ill. Const. 1970, art. VII,

§6(m).

     The terms of the grant of home-rule power are broad and

imprecise, leaving to the courts the duty to determine whether a

power exercised by a home-rule unit is within the grant of section

6(a).  Ampersand, Inc. v. Finley, 61 Ill. 2d 537, 539-40 (1975);

Kirwin, 173 Ill. App. 3d at 703.  Whether the disputed exercise of

local governmental powers falls within the scope of home-rule

powers contemplated by section 6(a) generally depends on whether

the home-rule unit was acting in an area pertaining to its

government and affairs.  People Gas Light & Coke Co., 125 Ill. App.

3d at 98.

     An ordinance pertains to the government and affairs of a home-

rule unit where it relates to problems that are local in nature

rather than state or national.  Village of Bolingbrook v. Citizens

Utilities Co., 158 Ill. 2d 133, 138 (1994).  In more difficult

cases where a problem has both local and statewide impact, courts

are to consider the nature and extent of the problem, the units of

government that have the most vital interest in a solution, and the

role traditionally played by local and statewide authorities in

dealing with the problem.  Kalodimos v. Village of Morton Grove,

103 Ill. 2d 483, 501 (1984).

     If an ordinance enacted by a home-rule unit does not pertain

to that unit's government and affairs, a state statute regarding

that matter will preempt the ordinance.  See Village of Dolton ex

rel. Winter v. CSX Transportation, Inc., 196 Ill. App. 3d 564, 570

(1990); Kirwin, 173 Ill. App. 3d at 703-04; McLorn v. City of East

St. Louis, 105 Ill. App. 3d 148, 153-54 (1982).  In the context of

state action versus local action, preemption means the end of local

legislative control over a given subject where the legislature has

adopted a scheme of regulation over the same subject.  Kirwin, 173

Ill. App. 3d at 703.

     In the case at bar, we believe that utility regulation is not

a matter pertaining to local government and affairs.  Rather, the

regulation of public utilities is purely a problem of statewide

concern.  See Geneseo, 363 Ill. at 95; People Gas Light & Coke Co.,

125 Ill. App. 3d at 100-01.  We believe this is even more true

where, as here, the matter concerns the regulation of Commission-

approved activities that affect the transmission of electric power. 

As one of our sister states has recognized, "[i]t is rather

difficult to conceive of a subject which more requires uniform

regulation at a high and broad level of authority than the method

of transmission of electric power."  In re Public Service Electric

& Gas Co., 35 N.J. 358, 373, 173 A. 2d 233, 240 (1961).

     Thus, any ordinance that effectively regulates a construction

project approved by the Commission after a section 8--406(b)

proceeding is preempted because it does not pertain to the unit's

government and affairs.  To hold otherwise would permit any number

of home-rule units to regulate construction projects that the

Commission has already deemed to be necessary to promote the public

convenience and necessity.  The effect would be to eviscerate the

Commission's role as the body responsible for regulating public

utilities and defeat the Public Utilities Act's goal of providing

adequate, reliable, efficient, and least-cost electrical service to

the state's citizens.

     We now consider the power of a non-home-rule unit to enact an

ordinance that regulates public utilities.  In contrast to the

constitutional provisions applicable to home-rule units, non-home-

rule units are governed by "Dillon's Rule."  T&S Signs, Inc. v.

Village of Wadsworth, 261 Ill. App. 3d 1080, 1086 (1994).  Dillon's

Rule provides that non-home-rule units possess only those powers

expressly granted to them by the Illinois Constitution or by

statute, powers incident to those expressly granted, and powers

indispensable to the accomplishment of the declared objectives of

the non-home-rule unit.  Pesticide Public Policy Foundation v.

Village of Wauconda, 117 Ill. 2d 107, 112 (1987).  Non-home-rule

units cannot adopt ordinances under a general grant of power that

infringe upon the spirit of the state law or are repugnant to the

general policy of this state.  Village of Mundelein v. Hartnett,

117 Ill. App. 3d 1011, 1015 (1983).  The state statute is the

strongest indicator of public policy, and where the legislature

speaks on a subject upon which it has constitutional power to

legislate, the public policy is what the statute passed indicates. 

Hartnett, 117 Ill. App. 3d at 1015.

     Generally, non-home-rule units possess zoning powers under

section 11, division 13 of the Illinois Municipal Code (65 ILCS

5/11--13--1 et seq. (West 1994)).  However, ordinances passed under

these powers that conflict with the spirit and purpose of a state

statute are preempted by the statute.  See Hartnett, 117 Ill. App.

3d at 1015.  Here, the Public Utilities Act sets forth a

comprehensive scheme whereby the Commission is responsible for

regulating public utilities.  Ordinances adopted by non-home-rule

units that regulate public utilities, at least regarding a

utilities activities which have been approved in a section 8--

406(b) proceeding, conflict with this scheme.  Thus, non-home-rule

units do not possess the power to adopt or enforce such ordinances.

     In summary, the Public Utilities Act preempts enforcement of

ordinances adopted by home-rule units and non-home-rule units that

regulate or effectively regulate public utilities, at least where,

as here, the subject matter involves Commission-approved

construction projects which are intended to facilitate the

transmission of electric service.

     The cases cited by Warrenville for the proposition that the

Commission's orders do not preempt a municipality's zoning

ordinance are distinguishable.  None of the cases cited by

Warrenville concern the preemptive scope of an order by the

Commission that grants a certificate of public convenience and

necessity pursuant to section 8--406(b) of the Public Utilities

Act.  See, e.g., In re Wolf v. Village of Mt. Prospect, 314 Ill.

App. 23 (1942); Village of Bensenville v. Illinois Commerce

Commission, 29 Ill. 2d 601 (1963); Commonwealth Edison Co. v.

County of Lake, 183 Ill. App. 3d 1060 (1989).  Village of

Carpentersville v. Pollution Control Board, 135 Ill. 2d 463 (1990),

and Lily Lake Road Defenders v. County of McHenry, 156 Ill. 2d 1

(1993), are additionally distinguishable in that in those cases the

legislature had specifically provided by the particular statute

involved that the municipalities were not preempted, whereas the

Public Utilities Act does not contain a similar provision.  Compare

415 ILCS 5/1 et seq. (West 1994) with 220 ILCS 5/1--101 et seq.

(West 1994).

     Lastly, we note that Warrenville erroneously argues that our

decision would render meaningless section 5--12001 of the Counties

Code (55 ILCS 5/5--12001 (West 1994)) and section 110--15(c) of the

Township Code (60 ILCS 1/110--15(c) (West 1994)).  Those statutory

provisions simply place additional restrictions on counties and

townships beyond the scope of projects authorized by the Commission

pursuant to a certificate of public convenience and necessity.

     For the foregoing reasons, the judgment of the circuit court

of Du Page County is affirmed.

     Affirmed.

     DOYLE and COLWELL, JJ., concur.