# Illinois Official Reports

## Appellate Court

---

### *Englum v. City of Charleston*, 2017 IL App (4th) 160747

---

| | |
|---|---|
| Appellate Court Caption | STEVEN C. ENGLUM, Plaintiff-Appellee, v. THE CITY OF CHARLESTON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket Nos. 4-16-0747, 4-16-0748 cons. |
| Filed | June 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Coles County, Nos. 14-CH-5, 14-CH-6; the Hon. Brien J. O'Brien, Judge, presiding. |
| Judgment | No. 4-16-0747, Reversed.<br>No. 4-16-0748, Dismissed. |
| Counsel on Appeal | William B. Isaly, of Ancel, Glink, Diamond, Bush, DiCianni & Krafthefer, PC, of Chicago, for appellant.<br><br>Christopher L. Wetzel, of Charleston, for appellee. |
| Panel | JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Harris and Knecht concurred in the judgment and opinion. |

**OPINION**

¶ 1 In December 2008, plaintiff, Steven C. Englum, was employed as a police officer by defendant, the City of Charleston (City)—a non-home-rule municipality—when he was injured while exiting his police cruiser. Englum was eventually awarded line-of-duty pension benefits because of the injury. *Englum v. Board of Trustees of the Police Pension Fund*, 2013 IL App (4th) 120982-U (reversing the pension board's decision denying Englum line-of-duty pension benefits).

¶ 2 In November 2013, Englum sent the City a letter requesting health insurance benefits under section 10 of the Public Safety Employee Benefits Act (Safety Benefits Act) (820 ILCS 320/10 (West 2012)). In December 2013, the City enacted an ordinance establishing local administrative procedures to determine applicants' eligibility for section 10 benefits. The City sent Englum notice of a hearing pursuant to those procedures, at which Englum's eligibility would be determined.

¶ 3 In February 2014, Englum filed two actions in the trial court. The first (case No. 14-CH-5) was a complaint for declaratory relief, asking the court, instead of the City's administrative entity, to determine Englum's eligibility for section 10 benefits. The second (case No. 14-CH-6) was a complaint for injunctive relief, seeking to enjoin the City from conducting an eligibility hearing under the City's ordinance.

¶ 4 The trial court determined that the proper procedure for determining section 10 benefits eligibility was for the court to decide Englum's complaint for declaratory relief. The court later held a hearing on Englum's complaint for declaratory relief and determined that he was entitled to section 10 benefits.

¶ 5 The City appeals, arguing that the trial court erred by (1) deciding Englum's eligibility based on his complaint for declaratory relief instead of allowing the City to determine eligibility under its procedural scheme and, alternatively, (2) concluding on the merits that Englum qualified for section 10 benefits. We agree with the City on its first point. We therefore reverse the trial court's judgment denying the City's motion to dismiss Englum's complaint for declaratory relief (case No. 14-CH-5; appeal No. 4-16-0747). We dismiss for lack of jurisdiction the City's appeal in No. 4-16-0748 (case No. 14-CH-6).

¶ 6 I. BACKGROUND

¶ 7 A. Englum's Injury

¶ 8 On December 7, 2008, Englum was on duty as a patrol officer for the City. Around 12:30 p.m., he received a dispatch informing him that the chief of police had requested an officer to respond immediately to the Casey's gas station. Dispatch did not provide Englum any other information. Englum responded and arrived at Casey's approximately one minute later. He noticed nothing suspicious at Casey's; nor did he see the chief of police. Unable to determine why he was dispatched, Englum returned to the police station in hopes of speaking to the chief. On his way into the station, Englum slipped and fell on ice in the parking lot, injuring his hand and shoulder.

¶ 9                    B. Proceedings on Englum's Claim for a Disability Pension

¶ 10    In February 2010, Englum applied to the Board of Trustees of the Police Pension Fund of the City of Charleston (Board) for a disability pension under the Illinois Pension Code (40 ILCS 5/3-101 to 3-152 (West 2008)). The Board denied him a line-of-duty disability pension but awarded him a not-on-duty disability pension. In May 2013, this court determined that the Board's decision to deny Englum a line-of-duty pension was clearly erroneous. *Englum*, 2013 IL App (4th) 120982-U, ¶ 25.

¶ 11             C. Proceedings on Englum's Claim for Health Insurance Benefits
                        Under Section 10 of the Safety Benefits Act

¶ 12    In November 2013, Englum sent the City a letter asserting that his injuries entitled him to health insurance benefits under section 10 of the Safety Benefits Act (820 ILCS 320/10 (West 2012)) and requesting the City to award him those benefits.

¶ 13                                1. *The City's Ordinance*

¶ 14    In December 2013, the City enacted title I, chapter 11, section 7, of the Charleston City Council Code, entitled "Administrative Hearings To Determine Eligibility Under the Public Safety Employee Benefit Act" (Ordinance). The Ordinance established administrative procedures to determine whether City employees, such as Englum, were eligible for section 10 health insurance benefits under the Safety Benefits Act. The Ordinance provided for an administrative hearing procedure overseen by a hearing officer appointed by the mayor of the City.

¶ 15    In January 2014, the City sent Englum notice of a February 2014 hearing pursuant to the Ordinance, where Englum's eligibility for benefits under section 10 of the Safety Benefits Act would be determined.

¶ 16                                2. *Englum's Complaints*
¶ 17             a. Englum's Complaint for Declaratory Relief (Case No. 14-CH-5)
¶ 18    In February 2014, Englum filed a complaint requesting the trial court to enter a declaratory judgment deeming him eligible for section 10 benefits.

¶ 19             b. Englum's Complaint for Injunctive Relief (Case No. 14-CH-6)
¶ 20    On the same day, Englum filed a complaint for injunctive relief, arguing that the City's administrative scheme was unauthorized by state statute and requesting the trial court to enjoin the City from using the Ordinance's procedures to determine Englum's section 10 eligibility.

¶ 21                                3. *The City's Filings*
¶ 22    In March 2014, the City filed answers in both cases. Both answers included identical arguments raising the City's "first affirmative defense" of "choice of remedy." The City's choice-of-remedy defense argued, in both cases, that "this matter is not yet ripe" because Englum had not exhausted the administrative procedures available to him under the Ordinance. In June 2014, the City filed identical briefs in both cases supporting its "first affirmative defense."

¶ 23     In its briefs, the City argued that it had authority under the Illinois Municipal Code (65 ILCS 5/1-2-1, 10-4-1 (West 2012)) to establish the administrative scheme created by the Ordinance. Therefore, the City claimed, Englum was required to exhaust the procedures created by the Ordinance, and his "claim for eligibility to benefits" was not yet ripe for review by the trial court. (We note that the answer and brief filed in Englum's injunctive relief action (case No. 14-CH-6) raised arguments addressing the ripeness of Englum's claim for declaratory judgment ("claim for eligibility to benefits") and not his claim for injunctive relief.)

¶ 24                          4. *The December 2014 Hearing*

¶ 25     In December 2014, the trial court held a joint hearing in both cases. At the beginning of the hearing, the court accepted the parties' request to treat the City's answers in both cases as motions to dismiss Englum's respective complaints. The parties then presented arguments, and the court took the matter under advisement.

¶ 26                     5. *The Trial Court's January 2015 Orders*

¶ 27     In January 2015, the trial court entered identical orders in both cases denying the City's motions to dismiss. The court determined that the supreme court's decision in *Gaffney v. Board of Trustees of the Orland Fire Protection District*, 2012 IL 110012, 969 N.E.2d 359, precluded the City from establishing the procedural scheme created by the Ordinance. The court ordered that Englum's eligibility for section 10 benefits should be determined by the court in response to Englum's complaint for declaratory judgment in case No. 14-CH-5. (Although the court did not explicitly grant Englum's motion to enjoin the City's administrative procedures, its order had the practical effect of doing so.)

¶ 28                6. *The July 2016 Hearing on Englum's Complaint for*
                                *Declaratory Judgment*

¶ 29     In July 2016, the trial court conducted a hearing on Englum's complaint for declaratory judgment to determine his eligibility for section 10 benefits. After the close of evidence, the court took the matter under advisement.

¶ 30                7. *The Trial Court's September 2016 Opinion and Order*

¶ 31     In September 2016, the trial court entered identical orders with opinions in case Nos. 14-CH-5 and 14-CH-6. As to case No. 14-CH-5, the court concluded that Englum was eligible for benefits under section 10 of the Safety Benefits Act and ordered the City to award him those benefits and to compensate him for the costs of the suit.

¶ 32     Regarding case No. 14-CH-6, the court determined, "To the extent any matters remain pending in 14-CH-6, this Opinion is intended to represent a final ruling in regard thereto."

¶ 33     This appeal followed.

¶ 34                                  II. ANALYSIS

¶ 35     The City argues that the trial court erred by (1) denying the City's motion to dismiss Englum's complaint for injunctive relief (case No. 14-CH-6) and, alternatively, (2) determining that Englum was eligible for benefits under the Safety Benefits Act (case No.

14-CH-5).

¶ 36                     A. Englum's Complaint for Injunctive Relief

¶ 37    In appeal No. 4-16-0748, the City seeks to appeal from the judgment in case No. 14-CH-6. The City's notice of appeal asserts that the City is appealing the trial court's September 2016 order "denying Defendant's Motion to Dismiss Plaintiff's Complaint for Injunctive Relief." The language in the City's notice of appeal is inaccurate—the court's September 2016 order did not deny the City's motion to dismiss. Instead, the September 2016 order—as it related to case No. 14-CH-6—purported to "represent a final ruling" as to "any matters remain[ing] pending."

¶ 38    What remained pending in case No. 14-CH-6 was Englum's complaint for injunctive relief, which sought to enjoin the City from adjudicating his claim for section 10 benefits under the administrative procedures established by the Ordinance. The court's September 2016 order in case No. 14-CH-6—despite claiming to represent a final ruling as to the pending complaint for injunctive relief—did not actually specify whether the court was granting or denying that complaint. Although the court's order had the practical effect of granting the injunction—because the court went on to adjudicate Englum's complaint for declaratory relief in case No. 14-CH-5 instead of allowing the City to proceed with its administrative procedures—no final judgment explicitly orders that relief. Without an order specifically ruling on the complaint for injunctive relief, there is no final judgment in case No. 14-CH-6 from which the City can appeal. We therefore conclude that we lack jurisdiction over appeal No. 4-16-0748, and we dismiss that appeal.

¶ 39                     B. Englum's Complaint for Declaratory Relief

¶ 40    In appeal No. 4-16-0747, the City appeals the trial court's decision in case No. 14-CH-5. In that case, the City filed a motion to dismiss, arguing that Englum's complaint for declaratory relief was not yet ripe because he had not exhausted the City's administrative procedures to resolve his claim. The court denied the City's motion to dismiss. The denial of a motion to dismiss is not a final and appealable order. *Marzouki v. Najar-Marzouki*, 2014 IL App (1st) 132841, ¶ 9, 12 N.E.3d 620. Therefore, this appeal is the City's first opportunity to seek review of the trial court's decision denying plaintiff's ripeness argument. We therefore address that argument, which requires us to determine whether the City—a non-home-rule municipality—had the authority to establish local administrative procedures to determine eligibility for benefits under section 10 of the Safety Benefits Act.

¶ 41                     1. *Statutory Language and the Standard of Review*
¶ 42                     a. Section 10 of the Safety Benefits Act
¶ 43    Section 10 of the Safety Benefits Act provides, in relevant part, the following:

> "An employer who employs a full-time law enforcement *** officer, *** who, on or after the effective date of this Act suffers a catastrophic injury *** shall pay the entire premium of the employer's health insurance plan for the injured employee, the injured employee's spouse, and for each dependent child of the injured employee until the child reaches the age of majority ***.
>                     * * *

*** [T]he injury *** must have occurred as the result of the officer's response to fresh pursuit, *** response to what is reasonably believed to be an emergency, an unlawful act perpetrated by another, or during the investigation of a criminal act." 820 ILCS 320/10(a), (b) (West 2012).

¶ 44                                b. The Standard of Review

¶ 45    The trial court agreed with the parties that the court should construe the City's answer as a motion to dismiss but did not clarify what kind of motion to dismiss. We conclude that the pleading was appropriately construed as a motion to dismiss pursuant to section 2-615(a) of the Code of Civil Procedure (735 ILCS 5/2-615(a) (West 2012)). A motion to dismiss under section 2-615(a) "tests the legal sufficiency of the complaint based on defects apparent on its face." *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. A section 2-615(a) motion essentially says, " ' "So what? The facts the plaintiff has pleaded do not state a cause of action against me." ' " *Id.* (quoting *Winters v. Wangler*, 386 Ill. App. 3d 788, 792, 898 N.E.2d 776, 779 (2008)). "A section 2-615(a) motion presents the question of whether the facts alleged in the complaint, viewed in the light most favorable to the plaintiff, and taking all well-pleaded facts and all reasonable inferences that may be drawn from those facts as true, are sufficient to state a cause of action upon which relief may be granted." *Id.* We review a court's decision on a section 2-615(a) motion to dismiss *de novo*. *Id.*

¶ 46                  2. *Local Government's Authority To Establish Administrative*
                        *Procedures To Decide Section 10 Claims*

¶ 47    No Illinois case has addressed the specific issue in this case—namely, whether a non-home-rule municipality has the authority to establish an administrative scheme for determining eligibility for benefits under section 10 of the Safety Benefits Act. But two cases have addressed the related issues of whether a fire protection unit and a home-rule municipality, respectively, have the authority to establish such procedures. We summarize those two cases, as follows.

¶ 48                                      a. *Gaffney*

¶ 49    In *Gaffney*, the Board of the Orland Fire Protection District (see Fire Protection District Act (70 ILCS 705/0.01 to 26 (West 2012))) passed an ordinance establishing an administrative procedure to determine Orland Park firefighters' eligibility for benefits under section 10 of the Safety Benefits Act. *Gaffney*, 2012 IL 110012, ¶ 11, 969 N.E.2d 359. Pursuant to the ordinance, employees would apply directly to the Board to determine whether the employees met the eligibility requirements of section 10. *Id.* Gaffney, a former firefighter, applied to the Board for section 10 benefits, and the Board denied his application. Gaffney later filed an action in the trial court for a declaratory judgment that he was entitled to section 10 benefits. The court dismissed his complaint.

¶ 50    On appeal, the supreme court was tasked with determining whether the Board had authority to establish and administer its own application procedure for determining section 10 eligibility. The *Gaffney* court noted that the Safety Benefits Act "does not provide any guidance on the proper procedure for seeking section 10 benefits." *Id.* ¶ 44. Despite the Safety Benefits Act's lack of a prescribed procedure, the *Gaffney* court held that a fire protection

district lacked the statutory authority to create its own procedure. The *Gaffney* court explained that neither the Fire Protection District Act (70 ILCS 705/0.01 to 26 (West 2012)) nor the Safety Benefits Act itself expressed legislative intent to provide a fire district with authority "to make administrative decisions on its employees' eligibility for section 10 benefits." *Gaffney*, 2012 IL 110012, ¶ 45, 969 N.E.2d 359. Therefore the court held that a complaint for declaratory judgment "was the proper means of seeking a determination of section 10 benefits in this case." *Id.* ¶ 46.

¶ 51                              b. *Pedersen v. Village of Hoffman Estates*

¶ 52        In *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, 8 N.E.3d 1083, the First District Appellate Court was tasked with determining how the holding of *Gaffney* should apply to a home-rule municipality's authority to enact local administrative procedures for determining section 10 benefits eligibility.

¶ 53        The *Pedersen* court first examined the general authority granted to home-rule units under article VII, section 6(a), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 6(a)). *Pedersen*, 2014 IL App (1st) 123402, ¶¶ 31-33, 8 N.E.3d 1083. Article VII, section 6(a), provides the following:

> "Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt." Ill. Const. 1970, art. VII, § 6(a).

Article VII, section 6(i), provides further:

> "Home rule units may exercise and perform concurrently with the State any power or function of a home rule unit to the extent that the General Assembly by law does not specifically limit the concurrent exercise or specifically declare the State's exercise to be exclusive." Ill. Const. 1970, art. VII, § 6(i).

In addition, section 7 of the Statute on Statutes provides, as follows:

> "No law enacted after January 12, 1977, denies or limits any power or function of a home rule unit, pursuant to paragraphs (g), (h), (i), (j), or (k) of Section 6 of Article VII of the Illinois Constitution, unless there is specific language limiting or denying the power or function and the language specifically sets forth in what manner and to what extent it is a limitation on or denial of the power or function of a home rule unit." 5 ILCS 70/7 (West 2012).

The *Pedersen* court explained that if the legislature intends to limit the exercise of home-rule powers, the statute in question "must contain an express statement to that effect." *Pedersen*, 2014 IL App (1st) 123402, ¶ 32, 8 N.E.3d 1083. The court added that "[i]n general, the sovereign powers of home rule units extend to the creation of administrative agencies and procedures." *Id.* ¶ 33.

¶ 54        The *Pedersen* court then concluded that the Safety Benefits Act did not limit the village's home-rule power to create an administrative agency to handle section 10 benefits claims. *Id.* ¶¶ 34-37. Section 20 of the Safety Benefits Act directly addressed the authority of home-rule units, as follows:

> "An employer, including a home rule unit, that employs a full-time law enforcement, correctional or correctional probation officer, or firefighter may not provide benefits to

persons covered under this Act in a manner inconsistent with the requirements of this Act. This Act is a limitation under subsection (i) of Section 6 of Article VII of the Illinois Constitution on the concurrent exercise of powers and functions exercised by the State." 820 ILCS 320/20 (West 2012).

Section 20 expressly limited the authority of home-rule units to act inconsistently with the provisions of the Safety Benefits Act. But the Safety Benefits Act contained no language providing how Safety Benefits Act claims should be adjudicated procedurally. Therefore, the *Pedersen* court held that "section 20 contains no language declaring the manner of deciding claims under [the Safety Benefits Act] is an exclusive state power or function." *Pederson*, 2014 IL App (1st) 123402, ¶ 37, 8 N.E.3d 1083.

¶ 55    In short, while the Safety Benefits Act contained *substantive* requirements for section 10 eligibility, the Safety Benefits Act contained no *procedural* requirements for determining whether a former employee met the substantive criteria. As a result, the *Pedersen* court concluded that "a home rule unit may employ an administrative procedure for assessing claims without acting in a manner inconsistent with the requirements" of the Safety Benefits Act. *Id.*

¶ 56                                    3. *This Case*

¶ 57    This case requires us to decide an issue left unanswered after *Gaffney* and *Pedersen*—namely, whether a *non*-home-rule municipal unit has authority to establish administrative procedures to determine eligibility for section 10 benefits. We are aware of no published Illinois case that has addressed that specific legal issue.

¶ 58                    a. Authority of Non-Home-Rule Municipalities

¶ 59    Non-home-rule units are governed by "Dillon's Rule," which provides that "non-home-rule units possess only those powers that are *specifically conveyed* by the Constitution or by statute." (Emphasis added.) *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 694, 808 N.E.2d 525, 530 (2004). Article VII, section 7, of the Illinois Constitution conveys six enumerated powers to non-home-rule units:

> "(1) [T]he power to make local improvements by special assessments; (2-4) the power, through referendum, to adopt, alter or repeal their forms of government and to provide for 'their officers, manner of selection and terms of office'; and (5-6) the power to incur debt and to levy or impose additional taxes, subject to certain exceptions and limitations." *Hawthorne v. Village of Olympia Fields*, 204 Ill. 2d 243, 255, 790 N.E.2d 832, 840 (2003) (quoting Ill. Const. 1970, art. VII, § 7).

In addition to those six enumerated powers, the legislature may grant additional powers "either expressly or impliedly, by statute." *Id.*

¶ 60    "While non-home-rule municipalities have the authority to enact ordinances, such ordinances may in no event conflict with state law or prohibit what a state statute expressly permits." *Village of Wauconda v. Hutton*, 291 Ill. App. 3d 1058, 1060, 684 N.E.2d 1364, 1366 (1997). "A local ordinance may impose more rigorous or definite regulations in addition to those enacted by the state legislature so long as they do not conflict with the statute." *Id.*

¶ 61    One particularly broad grant of power provided by the legislature is contained in section 1-2-1 of the Illinois Municipal Code, which provides the following, applicable to both home-rule and non-home-rule municipalities:

"The corporate authorities of each municipality may pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities ***." 65 ILCS 5/1-2-1 (West 2012).

¶ 62    One way non-home-rule municipalities exceed their power is by enacting ordinances that infringe on an already existing state statutory scheme. For example, in *Hawthorne*, the state legislature had enacted the Child Care Act of 1969 (225 ILCS 10/1 to 20 (West 2000)), which regulated child-care facilities and, in particular, day-care businesses operated out of residential homes. The non-home-rule Village of Olympia Fields then passed a zoning ordinance that regulated "home occupation" businesses, resulting in a near-ban on home day cares in the village. *Hawthorne*, 204 Ill. 2d at 246-47, 790 N.E.2d at 835-36. The village argued that it had authority to pass its ordinance under section 11-13-1 of the Municipal Code (65 ILCS 5/1-2-1 (West 2000)), which provided municipalities with the authority to enact zoning ordinances to regulate structures and their uses.

¶ 63    The supreme court held that the village's ordinance went too far. The court acknowledged that the Municipal Code granted the village the authority to enact zoning ordinances, but " '[w]here there is a conflict between a statute and an ordinance, the ordinance must give way.' " *Hawthorne*, 204 Ill. 2d at 259, 790 N.E.2d at 842 (quoting *Village of Mundelein v. Hartnett*, 117 Ill. App. 3d 1011, 1015, 454 N.E.2d 29 (1983)). The *Hawthorne* court explained that "a non-home-rule unit *** cannot adopt ordinances under a general grant of power that infringe upon the spirit of state law or are repugnant to the general policy of the state." *Id.* at 258-59, 790 N.E.2d at 842. The village exceeded its power by enacting a "complete bar" to state-licensed day-care homes, rendering the state's comprehensive statutory scheme in that area "a nullity." *Id.* at 261, 790 N.E.2d at 843.

¶ 64    In a similar vein was the supreme court's decision in *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 510 N.E.2d 853 (1987). That case involved the Illinois Pesticide Act of 1979 (Pesticide Act) (Ill. Rev. Stat. 1983, ch. 5, ¶¶ 801 to 828) and the Structural Pest Control Act (Pest Control Act) (Ill. Rev. Stat. 1983, ch. 111½, ¶¶ 2201 to 2225), which established statewide licensing standards for pesticide use and awarded regulatory power to state-government agencies. The non-home-rule Village of Wauconda later enacted its own ordinance regulating the use of pesticides in the village more strictly than the State acts. *Pesticide Public Policy Foundation*, 117 Ill. 2d at 109-10, 510 N.E.2d at 860.

¶ 65    The supreme court held that, although the Village of Wauconda had authority under the Municipal Code to enact its ordinance, that authority was preempted by the Pesticide Act and the Pest Control Act. Specifically, the village had explicit power to enact its ordinance under section 11-20-5 of the Municipal Code (Ill. Rev. Stat. 1983, ch. 24, ¶ 11-20-5), which granted municipalities the authority to make any regulations necessary to promote the public health. *Pesticide Public Policy Foundation*, 117 Ill. 2d at 114, 510 N.E.2d at 862. But that authority was preempted by the state legislature's establishing "a broad and detailed scheme designed to regulate the field of pesticide use in all respects." *Id.* at 116, 510 N.E.2d at 862. "Where the legislature enacts a comprehensive scheme of regulation, the legislature implies by the scheme that there is no room for additional regulation by local government units." *Id.* at 115, 510 N.E.2d at 862. By expansively legislating in that area, the legislature "intended that the State occupy exclusively the field of pesticide regulation." *Id.* at 116, 510 N.E.2d at 863.

¶ 66     b. The City's Authority To Enact the Ordinance in This Case

¶ 67     The City argues that section 10-4-1 of the Municipal Code (65 ILCS 5/10-4-1 (West 2012)) granted it the authority to enact the Ordinance. Section 10-4-1 of the Municipal Code provides, as follows:

> "The corporate authorities of any municipality may provide by ordinance in regard to the relation between all municipal officers and employees in respect to each other, the municipality, and the people." *Id.*

¶ 68     We agree with the City and hold that section 10-4-1 granted the City the authority to enact the Ordinance in this case. The determination of section 10 eligibility involves the "relation" between municipal "employees," the "municipality," and "the people" who pay taxes that fund section 10 benefits. The language of section 10-4-1, in addition to section 1-2-1, which grants municipalities the authority to "pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities," granted the City authority to establish administrative procedures to determine its employees' eligibility for health insurance benefits (65 ILCS 5/1-2-1 (West 2012)).

¶ 69     In so concluding, we are aware that any doubt concerning the grant of power to a non-home-rule entity is resolved against the non-home-rule entity. *Rajterowski v. City of Sycamore*, 405 Ill. App. 3d 1086, 1119, 940 N.E.2d 682, 709 (2010). Nonetheless, for the reasons stated, we conclude that section 10-4-1 and 1-2-1 of the Municipal Code (65 ILCS 5/10-4-1, 1-2-1 (West 2012)) provide the City with the necessary authority.

¶ 70     4. *Was the City's Authority Preempted by the Safety Benefits Act?*

¶ 71     Having determined that the City had the general authority to enact the Ordinance, we now determine whether the Safety Benefits Act evinces the legislature's intent to preempt that authority. We conclude that the Safety Benefits Act does not preempt the City's authority.

¶ 72     Unlike the statutory context in *Hawthorne*, which involved a comprehensive state statutory scheme, the Safety Benefits Act is not comprehensive. As the supreme court noted in *Gaffney*, the Safety Benefits Act "does not provide any guidance on the proper procedure for seeking section 10 benefits." Therefore, in contrast to *Hawthorne*, the City was not preempted from establishing local procedures to address the statutory gap.

¶ 73     This case is also distinguishable from *Pesticide Public Policy Foundation*. There, the supreme court overruled the village's pesticide-regulation ordinance because "[t]o allow a local non-home-rule unit of government to override the determinations of the legislature would frustrate the purposes of the [state pesticide statutes]." *Pesticide Public Policy Foundation*, 117 Ill. 2d at 119, 510 N.E.2d at 864. In this case, the Ordinance did not override the determinations of the legislature. Instead, the Ordinance complemented the determinations of the legislature by enacting a procedural process to fulfill the substantive requirements of the Safety Benefits Act. The Ordinance did not "frustrate the purposes" of the Safety Benefits Act. If anything, the Ordinance facilitated the purposes of the Safety Benefits Act. Therefore, the City was not preempted from establishing the administrative procedures provided by the Ordinance.

¶ 74                              5. *Englum's Additional Arguments*

¶ 75        Englum first argues that allowing the City to enact its own procedures to administer section 10 benefits would violate the equal-protection clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) because not every municipality in Illinois has enacted similar procedures; therefore, section 10 benefits would be administered unequally to different citizens in different parts of the State. We reject this argument.

¶ 76        Englum's equal-protection argument overlooks the nature of municipal authority. The Illinois Constitution of 1970 broadened the authority of local governments to legislate at the local level. If an equal-protection violation occurred each time a municipality passed a unique ordinance, municipal lawmaking authority would be illusory. We note that Englum has cited no authority in support of his equal-protection argument.

¶ 77        Englum also argues that allowing the City to enact its administrative scheme would be unfair because it would allow the City to usurp the trial court's fact-finding role. Under the procedural arrangement established by the Ordinance, the City hearing officer would act as fact finder, and the trial court would act as a court of review owing deference to the hearing officer's findings of fact. Englum argues that the Ordinance is merely the City's underhanded attempt to have a City official perform the fact-finding instead of the court.

¶ 78        Englum presented no evidence regarding the City's ulterior motives, nor does he cite any authority for the proposition that we should evaluate the City's intent when determining its municipal authority. We confine our analysis to the plain language of the Illinois Constitution, the relevant statutes, and the Ordinance. Under those applicable authorities, we determine that the City had the authority to establish the administrative procedures contained in the Ordinance. Englum's eligibility for section 10 benefits should have been determined by those procedures instead of a complaint for declaratory relief. See *Beahringer v. Page*, 204 Ill. 2d 363, 375, 789 N.E.2d 1216, 1224 (2003) ("The exhaustion doctrine applies where a claim is cognizable in the first instance by an administrative agency.").

¶ 79                       C. The Trial Court's Decision on the Merits

¶ 80        Because we have determined that Englum's claim for section 10 benefits should have been adjudicated pursuant to the City's administrative procedures, we do not reach the merits of the trial court's decision awarding Englum section 10 benefits.

¶ 81        In conclusion, in appeal No. 4-16-0747, we reverse the trial court's decision denying the City's motion to dismiss Englum's complaint for declaratory relief in case No. 14-CH-5.

¶ 82                                     III. CONCLUSION

¶ 83        For the foregoing reasons, in appeal No. 4-16-0747, we reverse the trial court's judgment denying the City's motion to dismiss Englum's complaint for declaratory relief. We conclude that we lack jurisdiction to hear appeal No. 4-16-0748, and we dismiss that appeal.

¶ 84        No. 4-16-0747, Reversed.

¶ 85        No. 4-16-0748, Dismissed.