249 N.J. Super. 323 (1991)
592 A.2d 565
ABDELAZIM EL SHAER (AMAL ESTATES), PLAINTIFF-APPELLANT,
v.
THE PLANNING BOARD OF THE TOWNSHIP OF LAWRENCE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 22, 1991.
Decided June 27, 1991.
*325 Before Judges GAULKIN, SHEBELL and HAVEY.
Saul Cohen argued the cause for appellant (Werksman, Saffron, Cohen & Sylvester, attorneys; Saul Cohen of counsel and on the briefs with Eugene P. Sylvester).
Janice B. Stonaker argued the cause for respondent (Stonaker & Stonaker, attorneys; Janice B. Stonaker of counsel and on the brief).
The opinion of the court was delivered by HAVEY, J.A.D.
*326 In this action in lieu of prerogative writs, plaintiff appeals from a judgment sustaining defendant Planning Board of the Township of Lawrence's (Board) denial of plaintiff's major subdivision application. On appeal plaintiff urges that: (1) his compliance with the provisions of the township's Land Development Ordinance (LDO) compelled the Board to approve his application; (2) since the Board considered off-site conditions in denying the application, its determination is arbitrary, capricious and unreasonable, and (3) the Department of Transportation's (DOT) issuance of driveway access permits preempted the Board from considering traffic safety problems with ingress and egress onto and from State Highway 206. We affirm.
Plaintiff's proposal is to subdivide a 10.22 acre tract in Lawrence Township into ten residential lots. The property is bordered to the east by Route 206, to the north by Little Shabakunk Creek and to the south by Reeder Avenue. A portion of the tract falls within wetlands adjacent to the creek. Also, the flood hazard plain of the creek intrudes upon six of the proposed lots. However, plaintiff has received approval from the Department of Environmental Protection to fill portions of the affected property in order to build. Nevertheless, substantial portions of lots 60.10 and 60.11 fell within a proposed conservation easement which prevented construction of decks or other structures within the easement area. Additionally, the site is encumbered by a 60-foot gas line easement and 20-foot sanitary easement.
The proposed lots conform to the bulk requirements of the zoning ordinance. Four of the lots front on Route 206, and six lots are on a cul-de-sac running from Reeder Avenue. Water run-off from the rear of the lots on Route 206 will drain into a stream which connects with the Little Shabakunk Creek; drainage from the front of the lots will run into an existing culvert on Route 206. The run-off from the remaining six lots will *327 drain into a detention basin and then be released periodically into the creek.
The four lots on Route 206 will have driveway curb cuts directly onto the highway. Plaintiff obtained access permits from DOT for the four driveways after the department concluded that there was "no concern that this development will have an adverse impact on the State highway."
In rejecting the application, the Board found that because the four driveways are "opposite a dangerous intersection with Darrah Lane [and Route 206] ... the lots would not have safe ingress and egress." The Board also determined that Little Shabakunk Creek is already "very prone to flooding" and that potential drainage and flooding problems may "result in appreciable harmful effects to the environment" in violation of Section 8.804(b) of the LDO. Additionally, the Board concluded that the two lots affected most by the flood plain (lots 60.10 and 60.11) "were not suitable" for development because they had "no useable yard area." Finally, the Board noted that plaintiff failed to present alternative plans which would have less of an environmental impact than the plan proposed, as required by the ordinance. In affirming the Board, the trial judge endorsed the Board's fact-finding and concluded that its determination was not arbitrary, capricious or unreasonable.
We are satisfied that plaintiff has failed to overcome the presumption of reasonableness which attaches to the Board's decision. See Davis Enters. v. Karpf, 105 N.J. 476, 485, 523 A.2d 137 (1987); Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 285, 212 A.2d 153 (1965). That plaintiff may have met the specific bulk requirements of the development ordinance does not mean that he was entitled to an approval of his subdivision plan. A planning board "is not obligated to approve a subdivision merely because it does not violate any express provision of the zoning ordinance." Popular Refreshments, Inc. v. Fuller's Milk Bar & Recreation Center, Inc., 85 N.J. Super. 528, 537, 205 A.2d 445 (App.Div. *328 1964), certif. denied, 44 N.J. 409, 209 A.2d 143 (1965). It may require that all of the lots proposed on the development plat are shown to be adaptable for the intended purposes and without danger to the general welfare. Id. It is also duty-bound to protect the public and future owners of the property in the subdivision by requiring adequate road and drainage facilities. See Smith v. Township Comm. of Tp. of Morris, 101 N.J. Super. 271, 280, 244 A.2d 145 (App.Div. 1968). As our Supreme Court in Levin v. Township of Livingston, 35 N.J. 500, 510-11, 173 A.2d 391 (1961) stated the proposition:
it is of essential importance to determine whether the whole tract proposed to be subdivided is fundamentally suitable for the projected development from the standpoint of area, topography, drainage, soil characteristics, accessibility, availability of utilities and the like, or, if not, in whole or in part, whether and to what extent special conditions can be imposed to make it so.... It must consider the impact upon adjacent areas and the effect of other pertinent ordinances of the municipality. Special drainage and sanitary sewage disposal problems may require particular remedies to be undertaken.... In short, at inception the board has the very great responsibility of doing everything possible to avoid future problems of vital importance to the community and subsequent individual property owners.

(Emphasis added).
Plaintiff seeks to shoehorn a ten-lot development onto a parcel substantially encumbered by wetlands, a flood plain and utility easements. The Board applied sound planning concepts to protect the public interest, and thereby concluded that the existing physical constraints upon developing the parcel required rejection of the subdivision configuration as designed. We cannot conclude that the Board's determination was arbitrary, capricious or unreasonable.
Plaintiff argues that in denying the application the Board improperly considered off-site conditions, such as traffic on Route 206. He urges that cases which hold that a board cannot consider off-site conditions in a site plan review apply equally to applications for a subdivision. See PRB Enters., Inc. v. South Brunswick Plan. Bd., 105 N.J. 1, 7, 518 A.2d 1099 (1987); see also Dunkin' Donuts of N.J. v. North Brunswick Plan. Bd., 193 N.J. Super. 513, 515, 475 A.2d 71 (App.Div. 1984). We need *329 not address the issue since on-site conditions, having a potential adverse effect upon plaintiff's parcel and contiguous property and traffic flow, were sufficient to deny the application.
For example, the Board determined that drainage run-off from the subdivision may have an adverse impact on the environment and cause future drainage problems on contiguous properties. N.J.S.A. 40:55D-38b(3) provides that a subdivision ordinance must require adequate plans for storm water drainage. This provision gives the Board express power to compel adequate drainage on and from a subdivided parcel to alleviate existing bad conditions and to avoid new problems in drainage. See Ardolino v. Board of Adjustment of Bor. of Florham Park, 24 N.J. 94, 109, 130 A.2d 847 (1957). While plaintiff's expert stated that the proposed water detention basin would control peak run-off, he did not address the Board's overall concern that increased volumes of water created by the development may cause additional flooding on contiguous properties and Route 206. Moreover, the Board was not bound by plaintiff's expert's testimony. See Allen v. Hopewell Tp. Zoning Bd. of Adjustment, 227 N.J. Super. 574, 581, 548 A.2d 220 (App.Div.), certif. denied, 113 N.J. 655, 552 A.2d 177 (1988). The Board's finding of potential drainage problems is amply supported by sufficient credible evidence in the record. See Rowatti v. Gonchar, 101 N.J. 46, 51, 500 A.2d 381 (1985); Amato v. Randolph Tp. Plan. Bd., 188 N.J. Super. 439, 453, 457 A.2d 1188 (App.Div. 1982).
Similarly, it was entirely proper for the Board to consider the accessibility to and from the development onto Route 206, a heavily travelled state highway. N.J.S.A. 40:55D-38b(2) provides that a subdivision ordinance shall include provisions ensuring the suitable location of streets to accommodate prospective traffic "and to provide access for firefighting and emergency equipment to buildings and coordinated so as to compose a convenient system consistent with the official map." While the provision does not expressly provide for standards *330 regarding ingress and egress, the requirement that a subdivision provide safe ingress and egress is logically implied from the statutory language. See Levin, 35 N.J. at 510, 173 A.2d 391 (planning board must determine whether plan has suitable "accessibility" to public streets); see also Popular, 85 N.J. Super. at 538, 205 A.2d 445 (means of ingress and egress from a subdivision onto a "busy state highway" may be properly considered by a board in determining whether the proposal constitutes a potential danger to the public safety).
The Board was properly concerned with the safety of the residents of the four lots contiguous to Route 206 backing out onto the highway and the difficulty getting in and out of the subdivision during peak traffic hours. As the trial judge observed:
Lot 11 was so restricted that a driver would have to back out the driveway in order to gain access to the busy State Highway in front and to travel north, the driver would have to back across the southbound lane. It does not require expert testimony to conclude that such a scheme would be contrary to the public interest.
We agree.
It is true that the Board's traffic expert stated that plaintiff's proposal would not have a significant impact on Route 206. However, the Board had requested plaintiff to submit to the expert a "gap analysis" study to determine the gaps in traffic on Route 206 to enable the Board to gauge how much delay would be involved in getting in and out of the development, and no such study was presented. Without the "gap analysis" the expert was not able to address adequately the Board's basic concern about traffic safety as well as accessibility to and from the four lots. The Board was therefore entitled to give little weight to the expert's conclusion on this point and instead rely upon its members' own personal knowledge of traffic conditions contiguous to the development site. See Baghdikian v. Board of Adjustment of Bor. of Ramsey, 247 N.J. Super. 45, 50, 588 A.2d 846 (App.Div. 1991). Additionally, we note that the Board suggested that the driveways be *331 combined to reduce entry and exit onto Route 206 but plaintiff did not consider this alternative.
Plaintiff appears to argue that the State Highway Access Management Act (HAMA), L. 1989, c. 32 (N.J.S.A. 27:7-89 to -98), regulating access onto state highways preempts the Board's decision-making in this area. The short answer to the argument is that plaintiff did not apply for access permits under HAMA, which in fact did not become effective until May 24, 1989, after the Board's decision.[1]
In any event, we find no clear legislative intention to preempt a municipality's power to consider traffic safety and accessibility in the exercise of its zoning and planning control over local development. See Mack Paramus Co. v. Mayor and Council of Bor. of Paramus, 103 N.J. 564, 574, 511 A.2d 1179 (1986); Dome Realty, Inc. v. City of Paterson, 83 N.J. 212, 232, 416 A.2d 334 (1980). HAMA focuses on the impairment of the state's highway system caused by unrestricted access, N.J.S.A. 27:7-90d, and the public's right and interest in "a safe and efficient highway." N.J.S.A. 27:7-90g. The Board's function to assure adequate accessibility and safe passage to and from the site complements, rather than conflicts, with the public's right to "a safe and efficient highway." The statutory scheme is not so pervasive that it precludes coexistent municipal regulation addressing local traffic conditions. Indeed, when the pertinent provision of the Municipal Land Use Law, N.J.S.A. 40:55D-38b(10), was amended by L. 1989, c. 32 to require a subdivision ordinance to conform to the State's access management code,[2] the Legislature did not eliminate a planning board's *332 authority to consider access to and from a site in the context of reviewing subdivision applications. Thus, even when state highway access permits are granted, the Board must be free to consider, in the context of sound land use planning, how many driveways will be permitted, their location and whether they conform to the overall circulation design of the proposed subdivision plan.
Finally, the LDO requires that the applicant present alternatives in terms of site design and project location that may result in less of a negative impact than the development proposed. Plaintiff did not present such an alternative plan to the ten-lot configuration actually proposed. The absence of this information, standing alone, may support denial of a subdivision application. See Morris Cty. Fair Hous. Council v. Boonton Tp., 228 N.J. Super. 635, 642, 550 A.2d 777 (Law Div. 1988).
Affirmed.
NOTES
[1] Prior to the passage of HAMA, Title 27 spelled out no procedure for processing an access permit. See High Horizons Dev. Co. v. Department of Transp., 120 N.J. 40, 42, 575 A.2d 1360 (1990).
[2] HAMA directed DOT to adopt a state highway access management code within one year of its effective date providing for the regulation of access to state highways. N.J.S.A. 27:7-91a. The code has not been adopted as of May 21, 1991. See 23 N.J.R. 1525 (1991).