THE VILLAGE OF WAUCONDA, Plaintiff-Appellant, v. GEORGE N. HUTTON IV, Defendant-Appellee.

Second District    No. 2—96—1307

Opinion filed September 16, 1997.

James C. Hauser, of Law Offices of Magna & Hauser, of Gurnee, for appellant.

No brief filed for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, the Village of Wauconda, charged defendant, George N. Hutton IV, with operating a windsurfer (sailboard) without a personal flotation device (Village of Wauconda Code § 8—8—31(C) (amended May 21, 1996)). Defendant orally moved to dismiss, arguing that plaintiff's ordinance was inconsistent with state statutes regulating the use of personal flotation devices (PFDs). Plaintiff filed a written response. Following a bench trial, the court granted judgment for defendant, finding that the ordinance was inconsistent with and preempted by state law. Plaintiff appeals, and we affirm.

At the bench trial, the parties stipulated to the following facts. On August 14, 1996, defendant was operating a sailboard on Bangs Lake in Wauconda and was not wearing a PFD. Section 8—8—31(C) of the Village of Wauconda Code requires that people use PFDs when operating sailboards:

> "All personal watercraft, specialty prop-craft, water bikes, wind surfers or other similar watercraft that due to their nature could incapacitate the operator will be required to properly wear a Type I, Type II, or Type III personal flotation device in good serviceable condition." Village of Wauconda Code § 8—8—31(C) (amended May 21, 1996).

Section 4—1 of the Boat Registration and Safety Act (Act) (625 ILCS

45/4—1 (West 1996)) sets forth the state regulations for the use of PFDs, but provides in subsection H that "[t]he provisions of subsections A through G of this Section shall not apply to sailboards" (625 ILCS 45/4—1(H) (West 1996)). The court found that section 8—8—31(C) of plaintiff's ordinance was inconsistent with and preempted by section 4—1(H).

We note that defendant has failed to file a brief. However, we find that the record is simple and the claimed error is such that we can decide the issue without the aid of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

■ On appeal, plaintiff argues that its ordinance is not inconsistent with state law but, rather, regulates in an area that the state left open. We disagree. Plaintiff is a non-home-rule unit and therefore is governed by Dillon's Rule, which provides that non-home-rule units may regulate in a field occupied by state legislation when the constitution or a statute specifically conveys such authority. *T&S Signs, Inc. v. Village of Wadsworth*, 261 Ill. App. 3d 1080, 1090 (1994).

■ The authority for plaintiff to regulate in this area is provided in section 8—1 of the Act (625 ILCS 45/8—1 (West 1996)), which provides as follows:

"The provisions of this Act, and of other applicable laws of this State shall govern the operation, equipment, numbering and all other matters relating thereto whenever any vessel shall be operated on the waters of this State, or when any activity regulated by this Act shall take place thereon; but nothing in this Act shall be construed to prevent the adoption of any ordinance or local law by any political subdivision of the State relating to operation and equipment of vessels the provisions of which are not inconsistent with the provisions of this Act, amendments thereto or regulations issued thereunder: Provided, that such ordinances or local laws shall be operative only so long as and to the extent that they continue to be not inconsistent with the provisions of this Act, amendments thereto or regulations issued thereunder."

■ The relevant inquiry, then, is whether section 8—8—31(C) of plaintiff's ordinance is inconsistent with section 4—1(H) of the Act. While non-home-rule municipalities have the authority to enact ordinances, such ordinances may in no event conflict with state law or prohibit what a state statute expressly permits. *McCauley v. City of Rockford*, 207 Ill. App. 3d 244, 248 (1990). A local ordinance may impose more rigorous or definite regulations in addition to those enacted by the state legislature so long as they do not conflict with the statute. *Young v. Village of Glen Ellyn*, 120 Ill. App. 3d 692, 696

(1983). The exercise of police power by a municipality must be in harmony with any state law relating to the same subject. *Bank of Waukegan v. Village of Vernon Hills*, 254 Ill. App. 3d 24, 29 (1993). Municipalities may exercise police power concurrently with the state, and police regulations may differ from those of the state on the same subject, if they are not inconsistent with the state statutes. *Village of Mundelein v. Hartnett*, 117 Ill. App. 3d 1011, 1015 (1983).

■ Our research did not disclose any cases expressly defining "inconsistent" in this regard. However, in interpreting a statute, the primary rule of construction is to ascertain and give effect to the true intent and meaning of the legislature. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). Courts should look to the language of the statute as the best indication of legislative intent, giving the statutory terms their ordinary meaning. *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). Where the meaning of the statute is unclear from the language itself, a court may look beyond the language employed and consider the purpose of the law and the evils the law was designed to remedy. *In re Application for Judgment*, 167 Ill. 2d at 168.

Here, looking at the purposes of the Act is not particularly helpful. The policy is stated in section 1—1 of the Act (625 ILCS 45/1—1 (West 1996)): "It is the policy of this State to promote safety for persons and property in and connected with the use, operation and equipment of vessels and to promote uniformity of laws relating thereto." The Act has dual purposes, each of which would lead to a different conclusion in this case. If we were to consider the purpose of promoting safety, then we would be inclined to uphold the ordinance's PFD requirement, even though the State expressly declined to require PFDs for sailboarders. However, considering the purpose of uniformity of laws, we are required to determine that the ordinance was preempted because the statute specifically provides that the PFD requirements do not apply to sailboarders.

Nevertheless, after reviewing the relevant legislative history, we believe that the legislature's intent was that sailboarders should not be required to wear PFDs, and thus plaintiff's ordinance is inconsistent with the Act. In *People v. Heiple*, 133 Ill. App. 3d 583, 584 (1985), defendant Heiple was operating a windsurfer on the Illinois River, near Peoria. Heiple was charged with operating a watercraft without a PFD (Ill. Rev. Stat. 1983, ch. 95½, par. 314—1 (now codified, as amended, at 625 ILCS 45/4—1 (West 1996))). He was found guilty and required to pay a fine. The Appellate Court, Third District, reversed, finding that a windsurfer was neither a "vessel" nor a "watercraft" within the definition of the Act and therefore the Act's PFD

requirements did not apply to windsurfers. *Heiple*, 133 Ill. App. 3d at 586-88.

Reacting to *Heiple*, the legislature passed an amendment to the Act, effective January 1, 1986, adding "sailboards" to the definition of "sailboats." See Ill. Rev. Stat. 1987, ch. 95$^{1/2}$, par. 311—2 (now codified, as amended, at 625 ILCS 45/1—2 (West 1996)). The legislature was concerned that *Heiple*'s effect was to prohibit sailboard use in Illinois. The following excerpts from the General Assembly debates are instructive:

### HOUSE OF REPRESENTATIVES

"MAYS: *** The issue that came up, however, was a court ruling about 2 or 3 weeks ago which had to deal with windsurfers as not being classified as a boat, and there are not any Bills around for vehicles for that subject matter. And so we figured we'd try to get that on.

McPIKE: What is the subject matter?

MAYS: Windsurfers. They're not classified as boats pursuant to a court, and that takes them off all state lakes and areas like that. It's a very major issue. I discussed it with Representative Nash and the Conservation Department. That is the intent, to take care of that court ruling on this Bill.

McPIKE: The Court ruling prohibits?

MAYS: They interpreted windsurfers as non-boats, and I'm sure that...

McPIKE: And the court ruling would prohibit them from using Illinois lakes?

MAYS: That's right." 84th Ill. Gen. Assem., House Proceedings, June 27, 1985, at 233 (statements of Representatives Mays and McPike).

### SENATE

"SANGMEISTER: *** The only reason we're doing this is there was a decision in the 3rd District Appellate Court that said a sailboard was not a watercraft. You know, all these young people who wind surf? The department wants it made very clear that they...they are, in fact, a...a boat that comes under the Boat and Registration Safety Act [*sic*], and then they're going to exempt them from registration requirements so they don't have to pay any fees and they can go into areas that are designed for swimming only and all that kind of good stuff." 84th Ill. Gen. Assem., Senate Proceedings, June 30, 1985, at 97 (statements of Senator Sangmeister).

■ The legislature thus changed *Heiple*'s rationale—that a sailboard is neither a watercraft nor a vessel. However, the legislature

kept *Heiple*'s result by amending section 4—1, effective January 1, 1992, to provide that "[t]he provisions of subsections A through G of this Section shall not apply to sailboards." 625 ILCS 45/4—1(H) (West 1996). The sequence of the *Heiple* decision and the various amendments to the Act convinces us that it was the legislature's intent that sailboarders in Illinois should not be required to wear PFDs. Following a court decision that sailboarders do not have to wear PFDs because sailboards are not vessels or watercraft, the legislature first passed an amendment making it clear that sailboards were watercraft and later passed an amendment that the Act's PFD requirements do not apply to sailboards. We therefore find that the portion of the Wauconda ordinance requiring sailboarders to wear PFDs is invalid because it is inconsistent with state law.

We previously stated that a municipal ordinance may impose more rigorous regulations than a statute and still be consistent with it. If the Act required minimum buoyancy standards for PFDs for sailboarders and the ordinance required higher buoyancy standards, then our opinion might be different. Further, the result might have been different if the Act were simply silent about PFDs for sailboarders. However, considering the legislative history and the specific language employed in the Act, we find that the legislature's intent was that sailboarders should not be required to wear PFDs. Accordingly, we affirm the trial court's decision invalidating the portion of section 8—8—31(C) of the Village of Wauconda Code requiring PFDs for sailboarders.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.