STATE BANK OF WATERLOO *et al.*, Plaintiffs-Appellants, v. THE CITY OF WATERLOO *et al.*, Defendants-Appellees.

Fifth District   No. 5—01—0942

Opinion filed May 30, 2003.—Rehearing denied June 25, 2003.

Tom D. Adams, of Adams & Huetsch, of Columbia, and Thomas A. Le Chien, of Law Offices of Le Chien & Le Chien, Ltd., of Belleville, for appellants.

Floyd E. Crowder, of Crowder & Scoggins, Ltd., of Columbia, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

In 1995, as partial compensation in an eminent domain proceeding, the Illinois Department of Transportation (IDOT) granted the plaintiffs a series of permits for access to the planned Illinois State Route 3 bypass around the City of Waterloo, Illinois (City). After the construction of the bypass was complete, the plaintiffs applied to the city council for approval of a subdivision plat that proposed utilizing two of the access points previously granted by IDOT. The city council denied the plat based on its failure to meet standards for access to Route 3 contained in the City's comprehensive plan and subdivision ordinances enacted after IDOT had granted the plaintiffs the permits. Ruling on the plaintiffs' motion for a summary determination of major issues, the trial court held that IDOT's jurisdiction over Route 3 does not preempt all local control over access to the highway. Pursuant to Illinois Supreme Court Rule 308 (155 Ill. 2d R. 308), the plaintiffs requested the trial court to certify to this court the question of whether IDOT's authority to regulate access to state highways preempts the City's authority to deny a proposed subdivision plat based on its proposed accesses to Route 3. The trial court certified the question,

and the plaintiffs filed the instant interlocutory appeal. We answer the certified question in the negative and affirm the trial court's ruling.

## I. BACKGROUND

In July 1995, plaintiffs Tom and Joan Adams, Jay Huetsch, Robert Hawkins, and Market Street Development, Inc., entered into a settlement agreement with IDOT in an eminent domain proceeding. Under the agreement, the plaintiffs sold IDOT a highway right-of-way for the construction of a portion of Route 3, which IDOT planned to reroute from its previous location to bypass the city. IDOT compensated the plaintiffs for the taking both by providing monetary compensation and by granting the plaintiffs permits for access to Route 3 from their property. At that time, the property was agricultural.

In the winter of 1996, while the construction of the Route 3 bypass was ongoing, the City adopted a comprehensive plan. That plan recommended, in relevant part, as follows:

"It is recommended that the City take preemptive measures to protect the long[-]term utility of the [Illinois] Route 3 corridor. The State and Federal Government[s] are making a substantial investment in these improvements[,] and therefore[,] protecting its use as a through-traffic carrier is important.

The [Illinois] Route 3 Bypass has initially been designed to rural 2-lane standards. The right-of-way[,] however[,] could eventually accommodate a 5-lane urban design standard. It is recommended that access along the Bypass be limited to public street intersections at not less than 1000-foot intervals. Land access to adjacent parcels would be from these intersecting public streets rather than from private entrances off Route 3."

On July 20, 1998, the City amended the chapter of its code of ordinances governing subdivisions to implement the comprehensive plan. As amended, the City's revised code of ordinances provides, in relevant part, as follows:

"Whenever a development abuts an existing or proposed arterial highway, access to the development or property from the arterial highway shall be provided by one of the following means:

(A) A public frontage road separated from the arterial highway by a planting strip, defined as landscape twenty (20) feet wide, consisting of shrubbery and trees at least five (5) feet in height when planted and *** maintained at not less than eighteen (18) feet in height when full grown. The frontage road shall have access to the arterial highway at [a] right angle.

(B) A public street entered onto the arterial highway at [a] right angle.

(C) Public street intersection[s] off of the Limited Access

Highway shall be located at not less than one thousand (1,000) foot intervals on the same side of the street." Waterloo Revised Code of Ordinances § 34—3—9 (amended July 20, 1998).

In 1999, the Route 3 bypass was completed and opened to the public. The plaintiffs thereafter applied to the City's city council for approval of a subdivision plat for the North Pointe West Subdivision, a proposed commercial development along relocated Route 3. The proposed subdivision consists of three commercial lots with a shared parking lot that has two access driveways to Route 3. The Waterloo Planning Commission recommended that the city council deny the plat; however, the planning commission stated that it would recommend approval if the plat included only one driveway accessing Route 3.

On November 1, 1999, the city council voted to deny the plat. On September 21, 2000, the plaintiffs filed a complaint in the circuit court of Monroe County seeking (1) a declaratory judgment holding that the subdivision plat for the North Pointe West Subdivision meets all legal requirements and that, therefore, the plaintiffs are entitled to approval, (2) a *mandamus* order compelling the City to approve the North Pointe West Subdivision plat, and (3) a permanent injunction barring the City from refusing to issue building permits or approve subdivision plats for the remainder of the plaintiffs' property abutting Route 3 on the basis of proposed Route 3 access points for which IDOT had already granted permits.

On February 21, 2001, the plaintiffs filed a motion for a summary judgment or, in the alternative, a summary determination of major issues. On October 11, 2001, the court denied the motion for a summary judgment, finding such relief precluded by the existence of genuine issues of material fact. The court ruled that IDOT's jurisdiction over Route 3 does not preempt the City's authority to regulate access to the highway. The court, however, declined to rule summarily on the five additional issues raised in the plaintiffs' motion for a summary determination.

On October 24, 2001, the plaintiffs filed a motion pursuant to Supreme Court Rule 308 requesting the trial court to certify to this court the following question: "Does the Illinois Department of Transportation's jurisdiction [preempt] control by the City of Waterloo over private access to Illinois State Route 3 ***?" On November 26, 2001, the trial court certified the question to this court, and on January 9, 2002, we granted the plaintiffs' application for leave to appeal.

## II. ANALYSIS

The plaintiffs contend that the City is preempted from regulating

access to Route 3 from subdivisions within its jurisdiction by IDOT's authority to regulate state highway access. We disagree.

■ The Illinois Highway Code authorizes IDOT to "adopt and to amend reasonable and necessary rules, regulations[,] and specifications" covering access to state highways from private property abutting them. 605 ILCS 5/4—210 (West 2000). The legislature's only limit on IDOT's authority to regulate state highway access is as follows: "Except where the right of access has been limited by or pursuant to law," all property adjoining state highways must have "reasonable means of ingress from and egress to" the highway. 605 ILCS 5/4—210 (West 2000). The City argues that the phrase "Except where the right of access has been limited by or pursuant to law" includes limitations on access pursuant to municipal law and that, therefore, the legislature intended municipalities to have the authority to regulate access concurrently with IDOT.

■ Municipalities are neither expressly granted nor expressly denied the authority to impose additional limitations on state highway access. They are, however, granted the authority to establish design standards for subdivisions, including those located on state highways, and to determine the location, width, course, and surfacing of public streets, including those that intersect with state highways. 65 ILCS 5/11—12—5(1) (West 2000). Logically, the authority to determine the location of municipal streets that intersect with state highways gives municipalities some control over where state highways may be accessed. Similarly, because the design of a proposed subdivision includes the placement of driveways, the authority to regulate design standards of commercial subdivisions located on state highways gives municipalities some control over where such properties may access the highways. The plaintiffs contend, however, that the legislature intended IDOT to have exclusive authority to regulate access to state highways and that, therefore, municipalities are preempted from considering highway safety in deciding the locations of streets and driveways. We agree with the City.

■ Whether municipal regulation is preempted by state authority is a question of legislative intent. A comprehensive scheme of state regulation implies that the legislature intended to leave no room for local regulation. *Pesticide Public Policy Foundation v. Village of Wauconda*, 117 Ill. 2d 107, 115, 510 N.E.2d 858, 862 (1987). An express legislative intent that an act achieve statewide uniformity is similarly indicative that the legislature intended for state regulation to preempt local control. *Pesticide Public Policy Foundation*, 117 Ill. 2d at 116, 510 N.E.2d at 863. By contrast, where authority is expressly delegated to local governments to regulate in an area, the legislature did not

intend the state's regulatory authority to preempt the field entirely. *Village of Caseyville v. Cunningham*, 137 Ill. App. 3d 186, 189, 484 N.E.2d 499, 501 (1985); see also *Pesticide Public Policy Foundation*, 117 Ill. 2d at 116, 510 N.E.2d at 862 (finding preemption where "notably absent from the acts is any provision delegating authority to *** units of local government"). Where a problem is of statewide, rather than local, concern, courts will find preemption. *Commonwealth Edison Co. v. City of Warrenville*, 288 Ill. App. 3d 373, 378, 680 N.E.2d 465, 469 (1997). "[W]here a problem has both local and statewide impact, courts are to consider the nature and extent of the problem, the units of government that have the most vital interest in a solution, and the role traditionally played by local and statewide authorities in dealing with the problem." *Commonwealth Edison Co.*, 288 Ill. App. 3d at 379, 680 N.E.2d at 469.

■ The Illinois Highway Code includes a statement of legislative intent. It provides, in pertinent part, as follows:

"It is the intent and declared policy of the legislature that an integrated system of highways and streets is essential to the general welfare and to the agricultural, industrial, recreational, and social development of the State. *** [I]t is intended to provide for integrated and systematic planning and orderly development in accordance with actual needs. *** It is further declared that highway transportation system development requires the cooperation of State, county, township, and municipal highway agencies and coordination of their activities on a continuous and partnership basis[,] and the legislature intends such cooperative relationships to accomplish this purpose." 605 ILCS 5/1—102 (West 2000).

Thus, while the Illinois Highway Code does not provide specific legislative authority to municipalities to regulate access to state highways, it does contain a system of regulation that involves concurrent state, county, and municipal regulation of roads and highways "so as to assure a systematic approach to the task of providing a workable system of highways and roads throughout the entire [s]tate." *City of Highland Park v. County of Cook*, 37 Ill. App. 3d 15, 23, 344 N.E.2d 665, 671 (1975). Thus, the Illinois Highway Code and cases interpreting it expressly recognize that the control of highways is a matter of both statewide concern and local concern.

Moreover, IDOT's regulations reflect a policy of concurrent state and local authority over highway access points. A handbook outlining IDOT's policies for access driveway permits provides as follows:

"The applicant is responsible for insuring [*sic*] compliance with local land use and zoning plans, building codes, setback regulations, minimum lot sizes, density of buildings, provisions for

> adequate parking, historic preservation requirements, and other ordinances and regulations.
>
> Local planning and zoning agencies may be provided an opportunity to comment on whether or not commercial driveway applications meet local regulations. Permits will not be granted if [IDOT] is advised a development does not conform to their land use or zoning plans.
>
> Permits issued by [IDOT] do not release the applicant from compliance with local regulations nor [*sic*] from obtaining the required local approvals or permits."

Thus, the traditional role played by state and local regulators has been to provide concurrent regulation.

In the instant case, however, the local ordinance at issue directly limited access to Route 3 for the express purpose of protecting its safety and utility to the community. It did not merely regulate the placement of streets and driveways and indirectly limit access as a result. Therefore, we do not find the policy of concurrent regulation dispositive. No Illinois case decides the precise issue before us. However, the courts of other jurisdictions that have considered the precise situation with which we are presented have, for the most part, concluded that state regulation of highway access points does not preclude municipalities from imposing additional limits on access. We find their analyses instructive.

The Supreme Court of New Hampshire addressed the relationship of state and local regulation of state highway access points in *J.E.D. Associates, Inc. v. Town of Sandown*, 121 N.H. 317, 430 A.2d 129 (1981), and *Diversified Properties, Inc. v. Town of Hopkinton Planning Board*, 125 N.H. 419, 480 A.2d 194 (1984). Read together, we find that the two cases support the conclusion we reach today.

In *J.E.D. Associates, Inc.*, a developer intended to subdivide 135 acres of land it owned. The property straddled the town line dividing Sandown, New Hampshire, from the neighboring town of Danville. The developer submitted a subdivision plan for the portion of its property that was in Sandown to the Sandown Planning Board. The plan included a road called Cotton Farm Road, running from Route 121A, a state highway abutting the property, to the Danville town line. *J.E.D. Associates, Inc.*, 121 N.H. at 318, 430 A.2d at 129. The New Hampshire Commissioner of Public Works and Highways issued a permit to the developer for access to Route 121A from its planned intersection with Cotton Farm Road. *J.E.D. Associates, Inc.*, 121 N.H. at 318, 430 A.2d at 130. The Sandown Planning Board approved the subdivision plan, but with Cotton Farm Road ending in a cul-de-sac 25 feet from the Danville town line, so it provided no access to Route

121A for the Danville portion of the planned development. *J.E.D. Associates, Inc.*, 121 N.H. at 318, 430 A.2d at 129. The supreme court held that the broad authority of the state to regulate highway access points preempted municipal regulation of highway access. *J.E.D. Associates, Inc.*, 121 N.H. at 319, 430 A.2d at 130.

The New Hampshire court revisited its holding three years later in *Diversified Properties, Inc.* There, a town planning board denied a developer's application for a proposed 20-lot subdivision, on the ground that the planned access from the development to a state highway was unsafe. *Diversified Properties, Inc.*, 125 N.H. at 419, 480 A.2d at 194. The court stated:

> "We reaffirm our holding that it is the [s]tate which has the power to regulate access to [s]tate highways. [Citation.] We also state, however, that a town may legitimately consider the impact that increased traffic may have upon the safety of an existing or proposed access in determining whether or not to grant approval of a subdivision plan." *Diversified Properties, Inc.*, 125 N.H. at 420, 480 A.2d at 195.

The court explained the seemingly contrary results as follows:

> "In the *Sandown* case, the planning board exceeded its authority and unlawfully impinged upon the [s]tate's authority to regulate access to [s]tate highways when it sought to control the access to Route 121A from the Danville portion of the plaintiff-developer's property." *Diversified Properties, Inc.*, 125 N.H. at 420, 480 A.2d at 195.

In other words, the court found that the Sandown Planning Board had exceeded its authority by trying to control access to the state highway for property outside of its jurisdiction in a neighboring town. In the instant case, like *Diversified Properties, Inc.*, the City's requirement that the plaintiffs' parking lot only have one driveway does not seek to control access to Route 3 for property outside the City's jurisdiction.

The New Jersey Superior Court, Appellate Division, considered the issue in *El Shaer v. Planning Board of the Township of Lawrence*, 249 N.J. Super. 323, 592 A.2d 565 (App. Div. 1991). The *El Shaer* court's discussion of preemption was *dicta* because the state legislation alleged to preempt local control was enacted *after* the planning board had denied the plaintiff-developer's application. *El Shaer*, 249 N.J. Super. at 331, 592 A.2d at 569. We find its rationale persuasive, however.

The court found that the new New Jersey statute on highway access management, which regulated access to state highways, was "not so pervasive that it precludes coexistent municipal regulation addressing local traffic conditions" because the planning board's interest in

ensuring adequate and safe access to and from the proposed development "complements, rather than conflicts[ ] with," the state's interest in ensuring a safe and efficient highway. *El Shaer*, 249 N.J. Super. at 331, 592 A.2d at 569. The court further noted, "*[E]ven when state highway access permits are granted*, the [planning] [b]oard must be free to consider, in the context of sound land use planning, how many driveways will be permitted, their location[,] and whether they conform to the overall circulation design of the proposed subdivision plan." (Emphasis added.) *El Shaer*, 249 N.J. Super. at 332, 592 A.2d at 570. Similarly, we think that the City's interest in protecting the utility and safety of the portion of Route 3 passing through its jurisdiction complements the state's interest in maintaining a safe highway.

An Indiana appellate court faced facts closely analogous to those in the case at bar, in *Yater v. Hancock County Planning Comm'n*, 614 N.E.2d 568 (Ind. Ct. App. 1993). There, the county planning commission denied the plaintiff-developers' subdivision plan. The plan consisted of a series of lots bordering two existing roads, including a state highway. The plan called for each lot to have direct access to one of the two roads. The county planning commission required that the developers include an acceleration/deceleration lane, frontage road, or internal road with only two access points onto the state highway, rather than direct access for each lot. *Yater*, 614 N.E.2d at 575.

The developers claimed on appeal that the county lacked the authority to require them to provide limited access to the state highway because the county was preempted from doing so by state regulation. *Yater*, 614 N.E.2d at 575. The Indiana statute granting the state the authority to regulate highway access provided that an " 'opening may not be made' in a highway, right-of-way[,] or roadway over which a state highway is routed 'without the consent' " of the Indiana Department of Transportation. *Yater*, 614 N.E.2d at 575-76, quoting Ind. Code § 8—23—6—6(a) (1992). The court interpreted this statute to limit only the county's authority to approve access points to state highways. The court explained: "The power to regulate is thus restricted insofar as it is used to authorize *openings* in a highway ***. To that, [the Indiana Department of Transportation] must assent. However, the power to restrict access has not been explicitly made subject to the state's consent. By implication, then, the local governmental unit possesses that power ***." (Emphasis in original.) *Yater*, 614 N.E.2d at 576.

Although concluding that state authority to regulate highway access points did not preempt local regulation, the *Yater* court held that local governments did *not* have the authority to enact regulations that duplicated or were inconsistent with state statutes. "A conflict will be

found where an ordinance seeks to prohibit that which a statute expressly permits, but no conflict will be found where an ordinance seeks to supplement the burdens imposed by the statute, provided the additional burdens are logically consistent with the statutory purpose." *Yater*, 614 N.E.2d at 576. Like the *El Shaer* court, the *Yater* court found that local regulation of land use, taking traffic safety concerns into consideration, "is not only consistent with that of the state in granting access, it supplements and furthers it by reducing the cost to the state occasioned by unregulated land use development." *Yater*, 614 N.E.2d at 577.

A Pennsylvania appellate court reached the same conclusion in *Ice v. Cross Roads Borough*, 694 A.2d 401 (Pa. Commw. 1997). There, a developer purchased an empty corner lot and built a duplex on it. The property was located at the intersection of a municipal subdivision street and a state highway. *Ice*, 694 A.2d at 402. The municipality, Cross Roads Borough, granted a building permit that stated that the driveway must connect with the municipal street rather than the state highway. Later, however, the developers applied to the Pennsylvania Department of Transportation for two permits to construct driveways accessing the state highway. The Pennsylvania Department of Transportation granted the two driveway permits. *Ice*, 694 A.2d at 402. The plaintiffs constructed the driveways, and the borough notified them that the driveways violated its subdivision ordinance. *Ice*, 694 A.2d at 402. There, as here, the developers argued that the state's authority to regulate access to highways precluded municipal zoning ordinances from limiting access to a state highway. *Ice*, 694 A.2d at 403.

Like the *Yater* court, the *Ice* court concluded that although municipalities lacked the authority to *grant* access to state highways without the State Department of Transportation also granting permission, they were not preempted from *limiting* access. *Ice*, 694 A.2d at 405. In reaching this conclusion, the court stated that no prior cases, applicable statutes, or regulations contained any specific language prohibiting municipalities "from enacting more stringent requirements for access." *Ice*, 694 A.2d at 404. The court also cited the Pennsylvania Department of Transportation's regulations, which, like IDOT's regulations, (1) required anyone granted an access permit to also obtain any permits or approvals required by local authorities, (2) provided for review by municipal planning commissions and zoning boards before the approval of highway access permits, and (3) provided that access points granted by state permit would nonetheless be subject to all applicable local rules and regulations. *Ice*, 694 A.2d at 404. Unlike their Illinois equivalent, the Pennsylvania regulations

expressly stated that the "applicable laws, rules[,] and regulations" with which highway access permittees must comply included "[o]rdinances enacted by local municipalities which contain more stringent minimum safety requirements" than the Pennsylvania highway law imposed. *Ice,* 694 A.2d at 404. Although IDOT's regulations do not contain such an express provision, we interpret the phrase "compliance with local regulations" to include zoning ordinances imposing stricter safety standards on highway access than those imposed by IDOT.

These holdings are consistent with Illinois preemption law. In *People ex rel. Ryan v. Village of Hanover Park,* 311 Ill. App. 3d 515, 525, 724 N.E.2d 132, 139 (1999), the First District held that although the legislature did not preempt the entire field of traffic regulation, municipalities lacked authority to enact ordinances that were inconsistent with the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1998)). In *Village of Wauconda v. Hutton,* 291 Ill. App. 3d 1058, 1060, 684 N.E.2d 1364, 1366 (1997), the Second District stated that although local ordinances may "in no event conflict with state law or prohibit what a state statute expressly permits," they may "impose more rigorous or definite regulations" than those imposed by the state. There, a village ordinance required people to use personal floatation devices while operating various types of water craft, including sailboards. *Hutton,* 291 Ill. App. 3d at 1059, 684 N.E.2d at 1365. The Illinois Boat Registration and Safety Act (625 ILCS 45/1—1 *et seq.* (West 1996)), however, provided that its personal-floatation-device requirements did not apply to sailboards. *Hutton,* 291 Ill. App. 3d at 1059-60, 684 N.E.2d at 1365. The court explained why the village ordinance conflicted with the state statute, rather than merely providing a more stringent regulation, as follows: "If the [state statute] required minimum buoyancy standards for [personal floatation devices] for sailboarders and the ordinance required higher buoyancy standards, then our opinion might be different. *** However, *** we find that the legislature's intent was that sailboarders should not be required to wear [personal floatation devices]." *Hutton,* 291 Ill. App. 3d at 1063, 684 N.E.2d at 1368.

■ We find the instant case more analogous to the hypothetical example used by the *Hutton* court than to the facts facing that court. Although the City denied what the state authorized, it did so by applying standards for highway safety that were stricter than those applied by the state agency that granted the access. In short, we conclude, as did the *Ice* court, that both state approval and municipal approval is required in the instant case in order for the plaintiffs to construct the driveways accessing Route 3. See *Ice,* 694 A.2d at 405.

We note that because this case comes to us on the interlocutory appeal of a narrow certified question, we do not decide whether the denial of the access previously granted by state permit constitutes a regulatory taking, an issue that will likely face the trial court on remand. We decide only that the City is not preempted by state regulation from denying access where the state has granted it, so long as it is pursuant to more stringent regulation than the state's and not beyond the bounds of municipal authority. We conclude that the City had the authority to enact the zoning ordinance here at issue.

## III. CONCLUSION

For the reasons stated, we answer the certified question in the negative and affirm the trial court's ruling.

Certified question answered; order affirmed; cause remanded.

GOLDENHERSH and KUEHN, JJ., concur.