**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-6009-17T1

DEPETRIS FAMILY, LLC,

      Plaintiff-Respondent,

v.

MEDFORD TOWNSHIP ZONING
BOARD OF ADJUSTMENT,

      Defendant-Appellant.

_____

         Submitted March 16, 2020 – Decided April 21, 2020

         Before Judges Fasciale and Moynihan.

         On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1938-17.

         Platt & Riso, PC, attorneys for appellant (Christopher J. Norman, on the briefs).

         Hyland Levin Shapiro LLP, attorneys for respondent (Robert Baranowski, on the brief).

PER CURIAM

In this action in lieu of prerogative writs, defendant Medford Township Zoning Board of Adjustment (the Board) appeals from an August 9, 2018 judgment in favor of plaintiff Depetris Family, LLC, reversing the Board's denial of plaintiff's variance application and remanding to the Board for further proceedings. We reverse and uphold the Board's denial of the use variance application.

Plaintiff owns real property, known as the Village at Taunton Forge Shopping Center (the Center), in the Township of Medford, located in the Community Commercial Zoning District (CC Zone). In 2014, the Board approved plaintiff's plan to redevelop the Center, including permission for a coffee shop. Plaintiff instead proposed opening a Dunkin' Donuts with a drive-through; however, the CC Zone prohibits fast food restaurants, including drive-through food establishments. Plaintiff therefore applied for a use variance and site plan approval.

The Board held hearings over the course of three days between March 2017 and July 2017. Plaintiff's representatives, and Dunkin' Donuts's representatives, testified in support of the application. Board members, who were familiar with the local conditions, expressed concern about how the proposed drive-through would impact traffic. The Board reviewed a traffic study, which confirmed that the average time needed to make a left turn out of

the Center and onto Tuckerton Road during morning peak traffic was 78.2 seconds per vehicle, and that with the addition of the drive-through, typically three to four vehicles would queue while waiting to make that left turn. Thus, drivers may wait several minutes before being able to exit the Center. The study also considered an alternative, more circuitous exit route, which would require an average time of 37.8 seconds per turn. At the end of the hearings, the Board denied the application.

The Board premised the application's denial on its conclusion that the drive-through would be an ineffective and unsafe egress from the shopping center for left turns onto Tuckerton Road between 7:00 a.m. and 9:00 a.m. It relied on Price Co. v. Zoning Board of Adjustment of Union, 279 N.J. Super. 327, 334 (Law Div. 1993) (stating that Board members could reject expert testimony and rely on their own knowledge of traffic conditions), aff'd o.b., 279 N.J. Super. 207 (App. Div. 1994).

On appeal, the Board raises the following points for this court's consideration:

POINT I

THE ZONING BOARD'S DENIAL OF THE REQUESTED USE VARIANCE WAS REASONABLY MADE AND SUPPORTED BY EVIDENCE IN THE RECORD BELOW.

In its reply brief, the Board raises the following additional points, which we have renumbered:

A. The Zoning Board Reasonably Relied Upon The Traffic Gap Study Finding Of A 78.2 Second Delay For Left-Turns Onto Tuckerton Road To Justify Its Denial Of The Use Variance.

B. The Zoning Board's Denial Of Use Variance Approval Was Not Based Upon Any Misinformation Or Misunderstanding.

C. The Zoning Board Did Not Discriminate Against Respondent's Dunkin['] Donut[s] Application, Compared To Other Coffee Shops With Drive-[Throughs] Granted Use Variance Approval In Other CC Zoning Districts of Medford Township.

D. The Zoning Board's Approval Of Drive-[Throughs] For A Bank And Rite Aid Pharmacy At Respondent's Shopping Center Is Not Dispositive Because Those Uses Are Not AM Peak Uses.

E. The 2015 Site Plan Approval For A Coffee Shop At Respondent's Shopping Center Without Drive-[Through] Is Not Dispositive, Because The Board Reasonably Concluded That Coffee Shops With Drive-[Throughs] Generate Higher Customer Trips.

F. The Zoning Board Engineer Provided The Zoning Board With Relevant Evidence Of A Traffic Gap Study Concluding That a 78.2 Second Delay Would Exist For Left-Turns Onto Tuckerton Road And Allowed The Board Members To Reach Their Own Conclusions As

4

> [To] Whether Such Condition Was Unacceptably
> Inefficient Or Unsafe.
>
> G. The Zoning Board Members' Collective Decision
> Is Set Forth In Its Resolution Of Denial.

Our standard of review is well settled. "We have long recognized that zoning boards, 'because of their peculiar knowledge of local conditions[,] must be allowed wide latitude in the exercise of delegated discretion.'" Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (alteration in original) (quoting Kramer v. Bd. of Adjustment, Sea Girt, 45 N.J. 268, 296 (1965)). A local board's decision "enjoy[s] a presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Ibid. A court "should not disturb the discretionary decisions of local boards that are supported by substantial evidence in the record and reflect a correct application of the relevant principles of land use law." Lang v. Zoning Bd. of Adjustment of N. Caldwell, 160 N.J. 41, 58-59 (1999).

Under the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163, a zoning board is vested with the power "[i]n particular cases for special reasons, [to] grant a variance to allow departure from regulations . . . to permit . . . a use or principal structure in a district restricted against such use or principal structure[.]" N.J.S.A. 40:55D-70(d). "No variance or other relief may be granted . . . without a showing that such variance or other relief can be

granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone plan and zoning ordinance." Ibid.

The Board contends that it reasonably relied on the traffic study in concluding that plaintiff's use variance application should be denied. "A planning board should consider off-site traffic flow and safety in reviewing proposals for vehicular ingress to and egress from a site." Dunkin' Donuts of N.J., Inc. v. Twp. of N. Brunswick Planning Bd., 193 N.J. Super. 513, 515 (App. Div. 1984) (citation omitted). "[T]he authority to prohibit or limit uses generating traffic into already congested streets or streets with a high rate of accidents is an exercise of the zoning power vested in the municipal governing body." Ibid. (citation omitted); see also El Shaer v. Planning Bd. of Lawrence, 249 N.J. Super. 323, 329 (App. Div. 1991) (indicating that "it was entirely proper for the [b]oard to consider the accessibility to and from the development onto . . . a heavily travelled state highway").

In Price Co., the judge announced that, in considering whether to grant a use variance application, a zoning board has a right to consider existing traffic conditions and the impact that the proposed use would have on those conditions. 279 N.J. Super. at 334. The judge noted that the board had a right

to rely on "their own peculiar knowledge of traffic conditions" in rejecting the application for the use variance. Ibid.

Here, the Board denied plaintiff's application based on comprehensive traffic reports and personal knowledge of traffic conditions in making their decision. It found that "the 78.2-second delay time for left-turn movements by each vehicle creates a potentially hazardous condition for impatient or inexperienced motor vehicle operators." At best, this drive-through Dunkin' Donuts would result in inefficient traffic circulation at peak hours, and at worst it would result in unsafe traffic conditions. Cf. Sica v. Bd. of Adjustment of Wall, 127 N.J. 152, 166 (1992) (holding that a board should consider whether the use variance grant "would cause a substantial detriment to the public good").

The Board members used their own knowledge and experience in considering the existing traffic conditions around the Center. See Price Co., 279 N.J. Super. at 334. The Board emphasized that the roads are "heavily trafficked," especially during peak morning hours. In its decision, the Board explicitly stated it considered the submitted expert opinions in determining whether to grant the use variance. Based on those opinions, as well as personal considerations, the Board determined that the use variance should not be granted.

7

The Board asserts, and we agree, that it did not rely upon any "misinformation or misunderstanding" or facts to support its denial of the use variance application. Plaintiff argues that the Board "erroneously asserted that the study was conducted over the Easter break," and therefore traffic was "down significantly" that day. Although one Board member initially believed that the study was conducted during the local school's Easter break, the Board's engineer stated that the Board member was incorrect and that school was in session on the day the study was conducted. Additionally, the Board's chairperson reiterated that the Board member was incorrect, and the mistaken Board member himself then admitted that the school was on Easter break the following week. We therefore reject plaintiff's assertion that the entire Board was mistaken. The Board member corrected himself and recanted his statement. As plaintiff notes, the Board members were aware of the incorrect statement before making their ultimate determination.

The Board argues that it reasonably denied this use variance application—despite approving applications for other coffee shops with drive-throughs—because of the impact this establishment would have on traffic in considering its location. The Board may contemplate off-site traffic considerations when determining whether or not to grant a use variance

A-6009-17T1

application, and it can take steps to limit traffic into already congested areas. Dunkin' Donuts, 193 N.J. Super. at 515; see El Shaer, 249 N.J. Super. at 329.

Here, there is no evidence that the Board discriminated against this proposed use variance compared to other coffee shops with drive-throughs in the area. The Board reasonably explained that the other coffee shops are located in areas that are considerably more accessible. Additionally, the approval of one of the other coffee shops was conditioned on a no-left turn out of the area.

The Board previously approved drive-throughs in the Center for a Rite-Aid and for a bank. The Board contends that these previous approvals do not require them to now approve a Dunkin' Donuts drive-through in the same shopping center. We agree. Just because a proposed use fits within the scheme of an existing shopping center does not necessarily support the assertion that a particular location would be suitable for a fast food restaurant. Saddle Brook Realty, LLC v. Twp. of Saddle Brook Zoning Bd. of Adjustment, 388 N.J. Super. 67, 77 (App. Div. 2006); see also Funeral Home Mgmt., Inc. v. Basralian, 319 N.J. Super. 200, 209 (App. Div. 1999) (holding that "although property may be thought to be particularly suitable for a proposed use because the use fits well with the surrounding area . . . , that does not equate to special reasons"). Furthermore, even if a zoning board grants a

conditional site plan approval, the board is not required to ultimately grant approval if the applicant is unable to meet all conditions. See Park Ctr. at Route 35, Inc. v. Zoning Bd. of Adjustment of Woodbridge, 365 N.J. Super. 284, 291 (App. Div. 2004). As the Board noted in its brief, those use variances were granted because they were "conditioned upon the installation of a pork chop[1] to prevent left-turn movements onto Tuckerton Road," which is the same reason for the denial here.

The Board next argues that it was not required to grant a use variance for a Dunkin' Donuts with a drive-through, even though it had granted a preliminary approval for the site without a drive-through. The Board contends that a Dunkin' Donuts with a drive-through at another location generated sixty percent higher income after the drive-through was installed, therefore it was reasonable to conclude that more customers would come to the proposed Dunkin' Donuts, thus increasing traffic in and out of the Center.

Plaintiff's traffic engineer testified that the amount of traffic added by the drive-through would not be significant. However, when pressed at the hearing to quantify the difference, the traffic engineer failed to provide

---

[1] A pork chop is a triangular island with a tail pointing to approaching traffic. The pork chop forces traffic to go a certain way—in this case to the right—to prevent the attempt to make a left turn on Tuckerton Road.

numbers to reinforce his opinion. The Board disregarded that part of the factually unsupported traffic engineer's opinion.

In its resolution of decision, the Board specifically enumerates, as it argues here, that it used plaintiff's expert opinion to draw its own conclusions.

> The Zoning Board Engineer then reviewed [plaintiff's] complete supplemental traffic analysis in his report, . . . which concluded that, at full build out conditions, during the [a.m.] peak hour (from [seven a.m.] to [nine a.m.]), a Level of Service "F" is projected for a left-turn onto Tuckerton Road from the [Center's] entrance with an average delay of 78.2 seconds per vehicle attempting such movement. The Zoning Board Engineer, thus opined that, on average, a total of [three] to [four] vehicles would likely [queue]/stack in attempting this left-turn movement[.]

As the Board made clear, it did not reject plaintiff's expert testimony. Rather, it used the expert's testimony and reports to come to its own conclusions. See Price Co., 279 N.J. Super. at 334 (noting that the board "had a perfect right to reject the testimony of the traffic experts, to the extent that they disagreed with them, and to use their own peculiar knowledge of traffic conditions"). The Board explained how it got to its final decision and which facts and testimony it relied on.

N.J.S.A. 40:55D-10(g) provides that "[t]he municipal agency shall include findings of fact and conclusions based thereon in each decision on any application for development and shall reduce the decision to writing." The agency must then "provide the findings and conclusions through . . . [a]

11 A-6009-17T1

memorializing resolution adopted at a meeting[.]" Ibid. A decision on an application must be written and include "findings of fact and conclusions based thereon." Aurentz v. Planning Bd. of Little Egg Harbor, 171 N.J. Super. 135, 142 (Law Div. 1979).

In Scully-Bozarth Post #1817 of Veterans of Foreign Wars v. Planning Board of Burlington, 362 N.J. Super. 296, 312-13 (App. Div. 2003), this court announced that discussion amongst board members in a public forum is beneficial, but not mandatory. This court urged that off-the-record discussions between board members is appropriate. Ibid. Typically, before finalizing its resolution, board members will discuss multiple versions of the resolution to ensure that it encompasses all board member's intent. Ibid.; see Park Ctr. at Route 35, 365 N.J. Super. at 289 (holding that the entire record is to be considered in determining what was decided, notwithstanding the failure to include in the memorializing resolution).

Here, the Board's resolution encompassed its findings, which were supported by the record. The nine-page resolution clearly announced the facts that the Board considered in making its decision. The resolution recognized testimony that it found unconvincing. It noted that the Board's engineer agreed with the information in plaintiff's traffic report and used it to come to his own conclusions. The Board clearly found that the grant of the use variance would

12

result in traffic delays of up to an average of 78.2 seconds per car, which would exacerbate traffic during peak morning hours. Because of these findings, the Board ultimately denied the use variance application. The Board's reasoning and findings were clearly enumerated in its resolution.

Finally, the Board argues further that the judge misinterpreted Section 602(D) of Medford's Land Development Ordinance (LDO). Specifically, the Board questioned the judge's conclusion that the Board's denial "was improper because Medford Township failed to adopt zoning standards for a use that is not a permitted use." This section applies only to fast food restaurants constructed prior to June 1, 1992, which does not include plaintiff. Thus, it is inapplicable.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6009-17T1