2024 IL App (1st) 230834

No. 1-23-0834

Order filed May 23, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| CYNTHIA HARDY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | 2021 L 8330 |
| | ) | |
| THE VILLAGE OF SAUK VILLAGE, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Hoffman and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in granting summary judgment in favor of employer on former employee's claims for breach of contract and violation of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq*. (West 2016)).

¶ 2    Plaintiff Cynthia Hardy (Hardy) filed a two-count complaint against her former employer, the Village of Sauk Village (the Village). In count I Hardy sought damages for breach of contract and in count II she alleged a violation of the Illinois Wage Payment and Collection Act (IWPCA) (820 ILCS 115/1 *et seq*. (West 2016)). The trial court granted summary judgment in favor of the

Village on both counts. For the reasons that follow, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4     The Village is a non-home rule municipality located in Cook County, Illinois.[2] It is governed by a board of six trustees and a mayor. At all relevant times the mayor was Derrick Burgess. Mayor Burgess oversaw the day-to-day operations of the Village and delegates the supervision and assignment of duties of staff-level employees.

¶ 5     Hardy averred that she has a Bachelor of Science Degree in Business Administration and Accounting from Roosevelt University, and a Master of Business Administration with a major in Finance from Loyola University. Hardy began working for the Village in October 2018 as a part-time customer service billing clerk. In January 2019, she was promoted to a full-time position as utility billing administrator.

¶ 6     In March 2019, Hardy was promoted to a newly created position -- assistant finance director. Hardy and the Village executed an employment agreement (Agreement) for this new position on April 12, 2019. The Agreement had a commencement date of May 1, 2019 and an expiration date of April 30, 2021, "or such date as a new Village Mayor is elected and the new Mayor's term has commenced, whichever date is later." The Agreement contained the following relevant provisions:

Paragraph 3A provided four bases for termination: Mutual agreement; Permanent

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

[2]"Non-home-rule units are governed by 'Dillon's Rule,' which provides that 'non-home-rule units possess only those powers that are *specifically conveyed* by the [Illinois] Constitution or by statute.' " *Englum v. City of Charleston*, 2017 IL App (4th) 160747, ¶ 59 (Emphasis in original.) (quoting *Village of Sugar Grove v. Rich*, 347 Ill. App. 3d 689, 694 (2004)). The regulatory powers granted to non-home-rule municipalities are set forth in article VII, section 7 of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, § 7). *Hawthorne v. Village of Olympia*, 204 Ill. 2d 243, 255 (2003).

disability; Discharge for cause; or death.

Paragraph 3C defined "Cause" as "any serious misconduct, act, or failure to act by the EMPLOYEE which is detrimental to the best interests of the Village which is defined for purposes of this contract to be for the chronic inability, willful or wanton failure to attend to the responsibilities set forth in the contract or for a conviction for any felony or crime involving moral turpitude."

Paragraph 3C provided that "[i]f after an investigation into the alleged serious misconduct, act or failure to act, the EMPLOYER determines that notice of charges should be issued, the EMPLOYER shall provide notice of the charges to the EMPLOYEE which shall also inform the EMPLOYEE that he has a right to a hearing, upon written request, before the Mayor and Village Board."

Paragraph 3D provided that "[i]f EMPLOYEE qualifies for severance ***, the EMPLOYER agrees to provide EMPLOYEE for the remainder of the contract term, health and life insurance benefits under the same terms as provided to other Village employees, at no additional costs to the EMPLOYEE except for taxes where required and applicable. In consideration for, and as a condition to the payment of the severance benefits payable under this Paragraph 3, EMPLOYEE shall be required to execute a Resignation and Severance Agreement and Release Of All Claims form releasing EMPLOYER from any and all causes of action, claims and demands which EMPLOYEE may have against the EMPLOYER and return the executed document to the EMPLOYER."

Hardy's job duties included accounting, preparing utility bills, and preparing bank reconciliations.[3]

---

[3]"A bank reconciliation is a listing of each transaction that has taken place in a given period of time in order to explain any discrepancies between the bank's balance for an account and the balance shown in the account holder's records." *Old Republic Nat'l Title Ins. Co. v. United States*, No. 08-22670-CIV, 2010 WL 1727382, at *3 fn. 4 (S.D. Fla. April 28, 2010) (unpublished).

¶ 7    In May 2019, the board of trustees ordered a forensic audit. To complete the audit, the finance department had to work through a five-month backlog of outstanding bank reconciliations.

¶ 8    At the time Hardy took her new position, Anthony Finch was the finance director serving on an interim basis. Finch learned that Hardy was not properly preparing the assigned bank reconciliations. He met with Hardy regarding how to correctly prepare these documents and discussed training. Finch provided Hardy with the spreadsheet software Excel so she could properly prepare the bank reconciliations, but he soon determined that she did not have the "skillset" on Excel expected of an assistant finance director. The Village eventually brought in an outside consultant to assist in completing the bank reconciliations.

¶ 9    Finch informed Mayor Burgess about the difficulties Hardy was having in properly completing the bank reconciliations. The mayor met with Hardy and received assurances that the bank reconciliations would be properly completed. When Mayor Burgess spoke again with Finch, he was informed that Hardy was still having difficulties completing the assigned task.

¶ 10    Michelle Royster replaced Finch as finance director in August 2020. Royster found that Hardy lacked basic Excel skills and did not understand how to construct financial statements. Royster also determined that "Hardy was not able to prepare customary and standard bank reconciliations." She eventually discovered that an information technology consultant was doing work that was assigned to Hardy.

¶ 11    In November 2020, Royster gave Hardy several research, accounting, and bookkeeping "assignments" to complete, which were purportedly within her job duties. In a December 2020 review meeting, Royster discovered that Hardy had failed to complete many of the assignments.

¶ 12    On January 6, 2021, Royster issued a written warning to Hardy for failure to complete assigned tasks. Hardy was placed on a performance improvement plan (PIP), which included an

"action plan" consisting of various tasks with goals and deadlines. Hardy averred that after she reviewed the PIP, she became concerned that it contained false and inaccurate information and she expressed concern that the deadlines were unreasonable considering her other duties. Hardy refused to sign the PIP.

¶ 13   In February 2021, Royster learned that Hardy had failed to complete several assigned tasks in the action plan. Royster sent a memo to Mayor Burgess recommending that Hardy be reassigned to the position of accounts coordinator and that the position of assistant finance director be eliminated. The mayor approved Hardy's reassignment.

¶ 14   Hardy was demoted from her position of assistant finance director and reassigned to the position of accounts coordinator in March 2021. Hardy claims she was never informed in writing about her right to appeal her demotion or her right to counsel.

¶ 15   Hardy was purportedly dissatisfied with the reassignment and corresponding reduction in salary. Hardy claimed that she met with Mayor Burgess and expressed the belief that her demotion breached the Agreement and violated the IWPCA. Thereafter, Hardy retained counsel, who sent a letter to the Village dated March 26, 2021, asserting his belief that Hardy's demotion and accompanying salary reduction were in breach of the Agreement. Counsel requested that Hardy be restored to the position of assistant finance director, with back pay. Counsel sent a second letter to the Village dated May 13, 2021. The Village took no action in response to either letter.

¶ 16   According to Royster, Hardy became increasingly difficult to work with. Her job performance declined, and she made disparaging remarks about Royster to other employees. Mayor Burgess and Royster decided to terminate Hardy, effective May 24, 2021. Hardy claimed she received no notice of her ability to appeal her termination, nor did she receive a hearing. Hardy also contended that the Village did not offer her severance pay or a proposed release of claims.

¶ 17    Hardy filed a complaint against the Village in the circuit court of Cook County, alleging that it breached the Agreement by: (1) demoting her without cause; (2) terminating her employment without cause; and (3) failing to pay her severance pay. Hardy further alleged that the Village violated the IWPCA by failing to pay the remainder of money due under the Agreement and by retaliating against her for complaining that the Village had violated the IWPCA. Following briefing and oral argument, the trial court granted summary judgment in favor of the Village on all of Hardy's claims.

¶ 18    The trial court determined that the Agreement was void *ab initio* under section 8-1-7(b) of the Illinois Municipal Code (Code) (65 ILCS 5/8-1-7(b) (West 2020)). Section 8-1-7(b) prohibits corporate authorities from making contracts that exceed the term of the mayor holding office at the time the contract is executed. This section provides that a municipality may not make a contract relating to "the employment of a municipal manager, administrator, engineer, health officer, land planner, finance director, attorney, police chief or other officer who requires technical training or knowledge," where the contract exceeds "the term of the mayor *** holding office at the time the contract is executed." *Id.*

¶ 19    As the Agreement was drafted, the contract's duration exceeded the four-year term of Mayor Burgess, who was in office at the time of execution. Accordingly, the trial court determined that the Agreement "extended for an indefinite duration, *i.e.*, so long as Mayor Burgess remained in office." The trial court stated:

> "On its face, the Agreement extended beyond the term of Mayor Burgess. The Village lacked the power to enter into such a contract, rendering it void *ab initio*. Accordingly, no claim for breach of contract can stand, and the Village is entitled to judgment as a matter of law on the undisputed facts."

¶ 20    In addition, the trial court determined that the Village was entitled to summary judgment on Hardy's claim for violation of the IWPCA. The court stated it was unaware of any authority holding that an employee could pursue an IWPCA claim where the employment agreement was void *ab initio* as a matter of law due to the employer's lack of authority to enter into the agreement. The court reasoned it would be an absurd result "to permit an employee to utilize the IWPCA as an end-run around the constitutional limitation on a municipality's authority, and potentially recover from a municipality amounts due under a contract into which the municipality was constitutionally barred from entering."

¶ 21    The trial court further determined that Hardy's claim for failure to pay severance in violation of the IWPCA could not survive the Village's motion for summary judgment because she failed to satisfy the condition precedent of executing a release. In addition, the court determined that the amount of severance was inherently unknowable since it was based on an agreement of indefinite duration.

¶ 22    The trial court found that Hardy's claim for retaliatory termination in violation of the IWPCA could not overcome the Village's motion for summary judgment because the only evidence Hardy relied upon to establish retaliatory motive was the temporal proximity between her complaints that her demotion and accompanying salary reduction violated the IWPCA and her subsequent termination.

¶ 23    The trial court also granted summary judgment in favor of the Village on Hardy's claim that the Village violated the IWPCA by failing to pay her full contractual salary for the period between her demotion and termination. The court, however, held that were it not for its finding that a IWPCA claim cannot be based on an Agreement that is void *ab initio*, the court would have found that genuine issues of material fact existed. The court would have found that genuine issues

of material fact existed as to whether there was cause to demote and terminate Hardy and whether she was afforded procedural protections such as notice of the charges, the right to a hearing and to be represented by counsel. The court noted that the Agreement defined "cause" as the "chronic inability, willful or wanton failure to attend to responsibilities set forth in the contract or for conviction for any felony or crime involving moral turpitude." The court found that the Village failed to demonstrate that Hardy's alleged failures to carry out her job duties was the result of "chronic inability" or "willful or wanton failure."

¶ 24 This appeal followed.

¶ 25                                      II. ANALYSIS

¶ 26 On appeal, Hardy contends the trial court erred in granting summary judgment in favor of the Village on her claim for breach of the Agreement and for violation of the IWPCA. "The purpose of summary judgment is to determine whether a genuine issue of material fact exists that would require a trial." *Hodges v. St. Clair County*, 263 Ill. App. 3d 490, 492 (1994). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILC 5/2-1005(c) (West 2012). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518 (1993). "A triable issue precluding summary judgment exists where the material facts are disputed, or where, the material facts being undisputed, reasonable persons might draw different inferences from the undisputed facts." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004).

¶ 27 "The interpretation of a contract is a question of law and therefore may be decided on a

motion for summary judgment." *Joyce v. Mastri*, 371 Ill. App. 3d 64, 74 (2007). "A court's primary objective in construing a contract is to ascertain and give effect to the parties' intentions as expressed through the contract's language." *Nationwide Property & Casualty Insurance Co.*, 2022 IL App (1st) 210267, ¶ 25. "When presented with clear and unambiguous language, the intent of the parties must be determined from the language of the contract itself and given its plain and ordinary meaning." *Storino, Ramello & Durkin v. Rackow*, 2015 IL App (1st) 142961, ¶ 18. "We review *de novo* both a trial court's grant of summary judgment, as well as its interpretation of a contract." (citations.) *WLM Retail Trust v. Tramlaw Remainderman Limited Partnership*, 2018 IL App (1st) 170819, ¶ 16.

¶ 28    As mentioned, the trial court found that the Agreement was void *ab initio* under section 8-1-7(b) because its duration exceeded the four-year term of Mayor Burgess. Hardy argues that section 8-1-7(b) does not apply to the Agreement because the position of "assistant finance director" is not one of the enumerated positions listed in this section. We disagree.

¶ 29    Section 8-1-7(b) provides that a municipality may not make a contract relating to "the employment of a municipal manager, administrator, engineer, health officer, land planner, finance director, attorney, police chief or other officer who requires technical training or knowledge." We find that the catchall language of "or other officer who requires technical training or knowledge," is sufficiently broad enough to include the position of assistant finance director. An assistant finance director is chosen to assist the finance director, and the appointment implies that the assistant finance director is required to have technical training or knowledge similar to that of the finance director.

¶ 30    Our interpretation of this catchall phrase is supported by the doctrine of *ejusdem generis*, which provides that "when a statutory clause specifically describes several classes of persons or

9

things and then includes 'other persons or things,' the word 'other' is interpreted as meaning 'other such like.' " *People v. Davis*, 199 Ill. 2d 130, 138 (2002) (quoting *Farley v. Marion Power Shovel Co.*, 60 Ill. 2d 432, 436 (1975)). The position of assistant finance director is much "like" the enumerated position of finance director in that both positions require similar technical training and knowledge.

¶ 31 Hardy contends that even if section 8-1-7(b) applies to the Agreement, there was no violation because the Agreement did not conflict with the purpose of the statute, which is to preclude corporate authorities from entering into lengthy employment contracts that operate to bind successor boards or administrations. "The rule that a governmental body comprised of limited-term members cannot bind future incarnations of that body regarding employment contracts was established in *Millikin v. County of Edgar*, 142 Ill. 528, 32 N.E. 493 (1892)." *Mokena Community Park District v. Romanek*, 2020 IL App (3d) 180336, ¶ 11. The *Millikin* rule was eventually codified in section 8-1-7(b) of the Code. See *Id*. at ¶ 17; *Cannizzo v. Berwyn Township 708 Community Mental Health Board*, 318 Ill. App. 3d 478, 483 (2000); *Grassini v. DuPage Township*, 279 Ill. App. 3d 614, 620 (2000); *Village of Oak Lawn v. Faber*, 378 Ill. App. 3d 458, 472 (2007).

¶ 32 Hardy claims the Agreement did not operate to bind successor boards because the Agreement was "limited by its own terms to the length of the term of Mayor Burgess, the current Mayor when the contract was executed." Hardy argues that "[t]he Agreement expressly ends when the new Mayor is elected and takes office." According to Hardy, since the Agreement did not go beyond the term of Mayor Burgess, it complied with section 8-1-7(b).

¶ 33 Section 8-1-7(b) prohibits corporate authorities from making contracts that exceed the term of the mayor holding office at the time the contract is executed. At the time the Agreement was

executed, Mayor Burgess was serving a four-year term in office. Our supreme court has recognized that "[t]he common meaning of 'term in office' is the duration of office – one year, two years, etc." *League of Women Voters of Peoria v. County of Peoria*, 121 Ill. 2d 236, 249 (1987). Here, regarding section 8-1-7(b), the mayor's current four-year term is the time period within which the mayor and board of trustees had the authority to enter into employment contracts for administrative personnel such as assistant finance director.

¶ 34    The terms of the Agreement provided that it expired on April 30, 2021, or on "such date as a new Village Mayor is elected and the new Mayor's term has commenced, whichever date is later." The issue is that in the absence of term limits on the mayor, this later date cannot be predicted with certainty and could extend beyond Mayor Burgess's current four-year term in office. It is not uncommon for mayors to serve multiple terms in office. For example, as the Village points out, "Mayor Richard M. Daley served six four-year terms as the Mayor of Chicago."

¶ 35    Here, after Mayor Burgess finished serving his current four-year term in office, he could either decide not to seek reelection or he could successfully run for reelection and serve a new four-year term. In other words, there is no way of knowing when Mayor Burgess will leave office and a new mayor's term will commence, and thus no way to determine if the Agreement might extend beyond Mayor Burgess's current four-year term in office.

¶ 36    Hardy next argues that the Agreement does not operate to bind successor boards since section 8-1-7(b) refers to the term of the "Mayor or Presiding office holder," and not the board of trustees. Hardy contends it is untenable to interpret the relevant contract period as that of "the term of the board" since board members are elected to staggered four-year terms, with half the board up for reelection every two years. Hardy maintains that under these circumstances, it is impossible to determine when a "successor" board takes office.

11

¶ 37    A similar argument was made and rejected in *Cannizzo*. In that case, this court followed the *Millikin* rule to determine that although board members were elected to staggered terms, this did not prevent an executive director's employment contracts from being void *ab initio*, where the contracts extended beyond the term of the township supervisor at the time they executed. *Cannizzo*, 318 Ill. App. 3d at 485-88. The same applies here. We find the fact that village board members are elected to staggered terms does not prevent an employment contract from being *ultra vires* and void *ab initio*, if it extends beyond the four-year term of a village mayor who was holding office at the time the contract was executed, thus, binding successor boards.

¶ 38    Hardy next contends the trial court erred in granting summary judgment in favor of the Village on her claim that the Village violated the IWPCA by demoting her without cause, failing to pay her severance pay as provided for in the Agreement, and by retaliating against her for complaining about the IWPCA violation. The trial court found that the IWPCA does not apply where an employment agreement is void *ab initio*. We see no error in this finding.

¶ 39    "In order to state a claim under the [IWPCA], the existence of either an employment contract or agreement is required." *Catania v. Local 4250/5050 of the Communications Workers of America*, 359 Ill. App. 3d 718, 724 (2005). A contract or agreement that is void *ab initio* is treated as though it never existed and cannot be enforced. *Keystone Montessori School v. Village of River Forest*, 2021 IL App (1st) 191992, ¶ 85. The trial court did not err in granting summary in favor of the Village on Hardy's IWPCA claims where the Agreement on which she based her claims was void *ab initio*.

¶ 40                                III. CONCLUSION

¶ 41    For the foregoing reasons, we find the trial court did not err in granting summary judgment in favor of the Village on Hardy's claims for breach of contract or for violation of the IWPCA.

¶ 42    Affirmed.